[Civil No. 4283. Filed July 8, 1940.]

[104 Pac. (2d) 176.]

THOMAS H. COLLINS and J. B. MEAD, as Members, and R. H. MARTIN, as Chairman, of the Board of Supervisors of Pima County, Appellants, v. HERBERT F. KRUCKER and RICHARD H. CHAMBERS, Appellees.

Mr. J. Mercer Johnson, County Attorney, and Mr. Odin B. Dodd, Chief Deputy County Attorney, for Appellants.

Mr. Herbert F. Krucker and Mr. Richard H. Chambers, Appellees, *in Propria Persona.*

LOCKWOOD, J.—This is an action in *mandamus* against the board of supervisors of Pima county to compel it to petition the Governor to appoint a second judge of the superior court for that county. The facts necessary to a determination of this case are not in dispute, and may be stated as follows:

Pima county has a population, according to the last federal census, of something over 70,000, and there is but one judge of the superior court in that county. The work is so heavy that he cannot alone properly care for it, and a large number of the members of the bar at Pima county requested the board of supervisors to petition the Governor to appoint a second judge. The board replied, stating in substance, that there was too much work for one judge to handle properly, but that it was of the opinion the situation could be best met by calling in judges from smaller counties to assist the resident judge, rather than by requesting that a second judge be appointed. Its reasons for this were that there were a number of judges of the smaller counties who had expressed their willingness to come to Pima county to assist in caring for the work, if they were given reasonable notice when their services would be required, and that the cost of such procedure would be far less than the cost to the taxpayers necessarily incurred by the creation of a second division of the Pima county superior court. The board further stated that if, after a trial of this system, it still appeared that the work of the superior court could not be handled properly, it would be glad to consult again

with the bar of Pima county in regard to the matter. A petition for a writ of *mandamus* to compel the board to request the Governor to make the appointment was thereafter filed in the superior court and the writ issued, whereupon the question was brought before us for review.

The whole matter turns upon the meaning of certain constitutional and statutory provisions. Section 5 of article VI of the Constitution, so far as material, reads as follows:

"There shall be in each of the organized counties of the State a superior court, for which at least one judge shall be elected by the qualified electors of the county at the general election; Provided, that for each county having a census enumeration greater than thirty thousand inhabitants, one judge of the superior court for every additional thirty thousand inhabitants, or majority fraction thereof, *may be provided by law*. . . . " (Italics ours.)

It is apparent from this that the question as to whether the various counties shall have more than one judge of the superior court, when the census population exceeds 45,000, depends upon the will of the legislature, for the phrase "may be provided by law," with no other qualification, is invariably held to refer to action by that body. We must, therefore, determine what it has decided upon this subject. This can only be determined by an examination of the various acts adopted from time to time governing the situation. The first legislation upon this subject was paragraph 336 of the Revised Civil Code of 1913, which reads:

"In each of the counties of this state there shall be a superior court for which one judge shall be elected by the qualified electors of the county."

This was an explicit declaration by the legislature that at that time it thought only one judge was necessary in each county, and no method was provided

whereby a second judge could be given to a county, even though its census population exceeded 45,000.

In 1915 the legislature came to the conclusion that under some circumstances a second judge was necessary, and in chapter 3 of the second special session of that year paragraph 336, *supra,* was amended to read as follows:

"In each of the counties of this state there shall be a superior court for which one judge shall be elected by the qualified electors of the county, provided, that for each county having a census enumeration greater than thirty thousand (30,000) inhabitants *there shall be* an additional judge of the superior court, for every additional thirty thousand (30,000) inhabitants or majority fraction thereof." (Italics ours.)

This was a mandatory enactment that there should be an additional judge of the superior court whenever the census population reached a certain figure, regardless of any other conditions. Nothing was said as to the approval or the request of anyone being a condition precedent to the appointment of a second judge. It was, therefore, the duty of the Governor to appoint a second judge for any county when it reached the requisite population. A second judge was appointed for Cochise and for Maricopa counties under this amendment.

In 1921 chapter 61, regular session, the law was again amended to read, so far as material, as follows:

"336. In each of the counties of this State there shall be a superior court for which at least one judge shall be elected by the qualified electors of the county; provided, that for each county having a census enumeration greater than thirty thousand (30,000) inhabitants there *may be* an additional judge of the superior court, for every additional thirty thousand (30,000) inhabitants or majority fraction thereof.

"In each county of this state having a census enumeration greater than thirty thousand (30,000) inhabitants and *upon petition by the Board of Supervisors*

*of such county to the Governor, and upon the approval thereof by the Governor* there *shall be and there is* hereby created and established an additional division of the superior court for every additional thirty thousand (30,000) inhabitants, or majority fraction thereof, and any such county shall be held to be entitled to one additional superior judge for each additional division of such court, which judge shall receive the same salary as that paid the judge before the creation of any such division, and the divisions of the superior court of such counties shall be designated and known as division number one and division number two.

"For the purpose of this act the counties of Maricopa and Yavapai are hereby declared to have, and shall be held to have, a census enumeration equal to a majority fraction of thirty thousand (30,000) in excess of thirty thousand (30,000) inhabitants." (Italics ours.)

It will be noted that the mandatory provision of the law of 1915 was changed from "shall" to the permissive term of "may," and in addition thereto the act stated specifically that the second division should be created only "upon petition by the Board of Supervisors of such county to the Governor, and upon the approval thereof by the Governor." Under this statute a second judge was appointed for Yavapai county.

By 1925 the legal business in Cochise and Yavapai counties had greatly decreased, and by chapter 19 of the regular session laws of 1925 the following language was added to section 336, *supra*:

"Whenever a vacancy in any such additional division of the superior court shall be created by death, resignation, or the removal of the superior judge thereof, such vacancy shall not be filled, nor shall a superior judge thereof be appointed or elected, until the Board of Supervisors of the county in which such vacancy exists shall petition the Governor therefor and he shall approve the same."

One of the judges of Cochise and one of Yavapai county thereafter left the bench, and no petition being

filed as provided, no successors to those judges have since been chosen.

In the Code of 1928, section 3689 reads a follows:

*"Number of courts and judges.* In each county of the state there shall be a superior court, for which at least one judge shall be elected, and in each county having a census enumeration of not less than thirty thousand inhabitants, and a majority fraction of thirty thousand, there *shall be,* upon a petition therefor by the board of supervisors of such county to the governor and his approval thereof, an additional judge of the court for each additional thirty thousand inhabitants or majority fraction thereof." (Italics ours.)

The word "may" in the statute of 1921 was changed to read "shall," but it was followed by the qualification "upon a petition therefor by the board of supervisors of such county to the governor and his approval thereof."

We think it is clear from these various statutes that the law of Arizona has changed materially from time to time on this subject. In 1913 no additional judge could be chosen for any reason. In 1915 it was mandatory upon the Governor to appoint an additional judge for the counties of the state whenever they reached the required census population, and no other condition was required. In 1921 it was expressly provided that the appointment should be made conditioned upon a petition by the board of supervisors and the approval of the Governor. In 1925 an amendment required that when a second judge retired from office he should have no successor unless the supervisors and Governor desired it. In 1928 it was again provided that the petition and approval as aforesaid was a prerequisite to the appointment of another judge. It cannot be doubted that the action of the board and the Governor are conditions precedent to the appointment of a second judge and, indeed, this is recognized in effect by the bringing of this particular action.

■ The question then is whether the board of supervisors is given any discretion in regard to presenting a petition to the Governor, even though the population has reached the requisite figure, or whether its duty is purely ministerial in the premises. We cannot conceive where it is ministerial only. If the reaching of the requisite population makes the appointment of another judge mandatory, it is adding not only a fifth but a sixth wheel to the wagon to require (a) a petition by the board, and (b) its approval by the Governor. We cannot lightly suppose that the legislature would impose this kind of a duty upon these officers, when the statute of 1915 was ample if no discretion existed. We think the act of 1925 shows clearly that body recognized that even with a population of over 45,000 the circumstances might be such that it was not advisable to have a second judge.

There can be no doubt that the creation of a second division of any superior court under the existing law of Arizona is dependent upon two conditions precedent, the request therefor by the board of supervisors, and the approval by the Governor, and that both request and approval are discretionary with these officers. Indeed, counsel for appellees in their briefs do not argue very strenuously that the action of the board is ministerial only, but lay their chief stress on the claim that when the board has admitted the work is too much for one judge, it is an abuse of discretion for it to refuse to petition for a second.

■ The general rule is that if the action of a public officer is discretionary that discretion may not be controlled by *mandamus*. This rule, however, is qualified by the provision that if it clearly appears that the officer has acted arbitrarily and unjustly and in the abuse of discretion, the action may still be brought. If, therefore, it clearly appears that there was no manner in which the judicial work of the su-

perior court of Pima county could be properly handled except by a second regular judge, it might well be argued that the supervisors could be compelled to take the only action which was possible to relieve the situation. But we think there is no case which holds that when there is more than one way in which a duty imposed upon a public official may be performed, with practically the same results, that he may be compelled by *mandamus* to choose the one method rather than the other. Under our Constitution and statutes the judge of the superior court of another county may hold court in Pima county with the same authority and jurisdiction as the resident judge. The board of supervisors has found, and their finding is not questioned, that there are many such judges ready, able and willing to assist in the administration of justice in Pima county, and that the expense of caring for the judicial business in this manner will be much less than if it be handled through the creation of a second division of the superior court. The ultimate result to be reached is the proper administration of justice in Pima county. When it appears there are two methods whereby this may be accomplished, and one of them will cause a much greater burden than the other to the taxpayers, we think it is certainly no abuse of discretion for the supervisors to prefer to try the less expensive method until it is shown that it is unsatisfactory. Such being the law, the record in this case shows affirmatively that the board of supervisors did not abuse its discretion when it determined to try the one method rather than the other.

The judgment of the superior court of Pima county is reversed and the case remanded with instructions to quash the writ heretofore issued.

ROSS, C. J., and McALISTER, J., concur.