961 P.2d 1013

Paula S. SEARS and Alan E. Sears, wife and husband, on their own behalf and on behalf of their minor children Anna Marie Sears, Rebecca L. Sears, Isaiah S. Sears and Isabella C. Sears, Plaintiffs/Appellees,

v.

Jane Dee HULL, Governor of Arizona; State of Arizona; and Salt River Pima–Maricopa Indian Community, an Indian tribe organized under the Indian Reorganized Act of 1934, Defendants/Appellants.

No. CV–97–0477–T/AP

Supreme Court of Arizona,
En Banc.

July 16, 1998.

Bryan Cave LLP by Neil Vincent Wake, Phoenix, for Plaintiffs/Appellees.

Office of the Governor by Lisa K. Daniel, Counsel to the Governor, Phoenix, for Defendant/Appellant Governor Jane Dee Hull.

Grant Woods, Attorney General by Rebecca White Berch, First Assistant Attorney General and Thomas J. Dennis Assistant Attorney General, Phoenix, for Defendant/Appellant State of Arizona.

Shea & Wilks, P.C. by Philip J. Shea and Richard B. Wilks and William W. Quinn and

Osborn Maledon, P.A. by Andrew D. Hurwitz and Thomas L. Hudson, Phoenix, for Defendant/Appellant Salt River Pima–Maricopa Indian Community.

Dennis Garcia Tucson and Dorsey & Whitney by Eric Eberhard, Phoenix, for Amicus Curiae Pasqua Yaqui Tribe of Arizona.

Steptoe & Johnson LLP by David J. Bodney and Peter B. Swann, Phoenix and DeConcini McDonald by Luis A. Ochoa, Tucson, for Amicus Curiae Yavapai–Prescott Indian Tribe.

State Capitol–House of Representatives by Donald W. Jansen, Phoenix, for Amicus Curiae Jeff Groscost, Mark Anderson, Russel Bowers, Marilyn Jarrett, Karen Johnson, and Tom Patterson.

## OPINION

McGREGOR, Justice.

¶ 1 Plaintiffs brought a special action in superior court to enjoin the Governor from entering any gaming compact that permits slot machine or keno gambling with the Salt River Pima–Maricopa Indian Community. We hold that this action must be dismissed because plaintiffs lack standing.

## I.

¶ 2 Because our opinion in *Salt River Pima–Maricopa Indian Community v. Hull,* 190 Ariz. 97, 945 P.2d 818 (1997), sets forth in detail most of the facts relevant to the instant action, we describe only briefly the facts and procedure leading to this appeal.

¶ 3 In 1992, the Arizona Legislature enacted Arizona Revised Statutes (A.R.S.) § 5–601, which authorized the Governor, acting on the State's behalf, to negotiate gaming compacts with the various Indian tribes of Arizona pursuant to the federal Indian Gaming Regulatory Act (IGRA). Acting pursu-

ant to section 5–601, Governor Symington executed compacts with sixteen of the state's twenty-one tribes. However, relying on his interpretation of *Rumsey Indian Rancheria of Wintun Indians v. Wilson*[1] and *Seminole Tribe of Florida v. Florida,*[2] the Governor refused to negotiate any other tribal gaming compacts. Subsequently, in the 1996 general election, Arizona voters adopted Proposition 201, codified at A.R.S. § 5–601.01, which requires that the Governor enter "the state's standard form of gaming compact with any eligible Indian tribe that requests it." The standard gaming compact includes those provisions that are common to the previously executed compacts, which permit slot machine and keno gambling. *See* A.R.S. § 5–601.01.B.1.

¶ 4 The Salt River Pima–Maricopa Indian Community (the Tribe), an eligible tribe under the terms of Proposition 201, requested that the Governor execute a standard gaming compact. Shortly thereafter, in February 1997, Paula and Alan Sears (the Sears) asked this court to accept jurisdiction over their special action to enjoin Governor Symington from executing the requested gaming compact with the Tribe. We declined to accept jurisdiction.[3]

¶ 5 Governor Symington then responded to the Tribe's request by proposing a compact that differed significantly from the standard compact. The Tribe, dissatisfied with the proposed compact, filed a special action in this court to invoke the requirement of A.R.S. § 5–601.01 that the Governor enter into a standard compact with any eligible tribe that requests it. We accepted jurisdiction and denied the Sears' motion to intervene in that action.[4] We found section 5–601.01 constitutional and held that it required the Governor to enter into the standard gaming compact with the Tribe. *Hull,* 190 Ariz. at 105, 945 P.2d at 826.

**1.** 41 F.3d 421 (9th Cir.1994), amended and superseded, reh'g denied, en banc reh'g denied, 64 F.3d 1250 (1995), amended, reh'g denied, 99 F.3d 321 (1996), cert. denied sub nom. *Sycuan Band of Mission Indians v. Wilson,* —— U.S. ——, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997).

**2.** 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

**3.** *Sears v. Symington,* No. CV–96–0650–SA (Ariz. Feb. 12, 1997) (Supreme Court Order).

**4.** *Salt River Pima–Maricopa Indian Community v. Symington,* No. CV–97–0090–SA (Ariz. Apr. 30, 1997) (Supreme Court Order).

¶ 6    Prior to our decision in *Hull*, however, the Sears filed this statutory special action in the superior court against Governor Symington, the State of Arizona, and the Tribe.[5]   The Sears argued that IGRA prohibits the Governor from entering any gaming compact that permits slot machine or keno gambling.   The Sears asserted that such a compact between · the State and the Tribe would result in casino gambling near Scottsdale, which borders the Tribe's reservation.   Such gambling, the Sears asserted, would "substantially affect the character and quality of the[ir] community," expose their children to values contrary to their own, and result in "numerous negative secondary effects, including urban crowding, traffic and stresses which will detract from the quality of their immediate community."

¶ 7    The Tribe moved to dismiss and, alternatively, to stay the proceeding pending the disposition of *Hull*, arguing that the Sears lacked standing to bring the action and that the dispute was not ripe for decision.   The trial court denied both motions.   With respect to the standing argument, the court stated that the Sears had standing under A.R.S. § 12–2021, which permits any "beneficially interested" person to sue for mandamus relief.   Moreover, the court indicated that because the Sears' claims raised questions of public importance, the court could waive strict standing requirements.

¶ 8    The court subsequently granted judgment to the Sears and awarded them attorneys' fees.   The defendants filed a notice of appeal to the court of appeals.   Upon the parties' joint request, we accepted a transfer of the appeal to this court.   We have jurisdiction pursuant to Arizona Constitution, article VI, section 5.

## II.

¶ 9    The threshold question is whether, as defendants argue, the Sears lack standing to bring this action.   Because we agree that the plaintiffs lack standing, we do not address the merits of their claims.

¶ 10    In their complaint, the Sears relied solely on Arizona's mandamus statute, A.R.S. § 12–2021, to provide a jurisdictional basis for their action.   That statute states in part:

> A writ of mandamus may be issued by the supreme or superior court to any person ... on the verified complaint of the party beneficially interested, to compel, when there is not a plain, adequate and speedy remedy at law, performance of an act which the law specially imposes as a duty resulting from an office, trust or station....

The Sears argue that they need not demonstrate any special injury to bring this action because, under the mandamus statute, they are beneficially interested parties entitled to compel the Governor to fulfill a public duty, i.e., to refuse to enter the standard gaming compact with the Tribe.

¶ 11    We need not decide whether the Sears are "beneficially interested" within the meaning of section 12–2021 because this action is not appropriate for mandamus.   "Mandamus is an extraordinary remedy issued by a court to compel a public officer to perform an act which the law specifically imposes as a duty."   *Board of Educ. v. Scottsdale Educ. Ass'n*, 109 Ariz. 342, 344, 509 P.2d 612, 614 (1973).   Mandamus "does not lie if the public officer is not specifically required by law to perform the act."   *Id.*   Because a mandamus action is designed to compel performance of an act the law requires, "[t]he general rule is that if the action of a public officer is discretionary that discretion may not be controlled by mandamus."   *Collins v. Krucker*, 56 Ariz. 6, 13, 104 P.2d 176, 179 (1940).   In addition, this court has long held that mandamus will lie only "to require public officers to perform their official duties when they refuse to act," and not "to restrain a public official from doing an act."   *Smoker v. Bolin*, 85 Ariz. 171, 173, 333 P.2d 977, 978 (1958).   Thus, the requested relief in a mandamus action must be the performance of an act and such act must be non-discretionary.

---

·**5.**   After Governor Symington resigned from office in September 1997, his successor, Governor Hull, was substituted as defendant.

¶ 12  This action does not fulfill either of the basic requirements of an action for mandamus. The Sears seek not to compel the Governor to perform an act specifically imposed as a duty but rather to prevent the Governor from acting. Hence, the Sears actually seek injunctive relief, which is not available through an action for mandamus or any other form of special action. *See* Rule 1, Ariz. R.P. Spec. Acts., 17B A.R.S. (1997).

¶ 13  The Sears also fail to show that the requested limitation on the Governor's actions involves the performance of a non-discretionary act. They attempt to make this showing by arguing that the provisions of IGRA and of the state and federal constitutions, as interpreted by the Sears, *require* the Governor *to refuse* to enter the compact. However, we held in *Hull* that, as a matter of state law, A.R.S. § 5–601.01 required the Governor *to enter* a standard compact. *Hull,* 190 Ariz. at 105, 945 P.2d at 826. Hence, under state law, the Governor's execution of the standard compact cannot be regarded as a failure to perform a duty specifically imposed by law.

¶ 14  The most the Sears can establish is that they disagree with the Governor's interpretation of A.R.S. § 5–601.01 and of IGRA, and, perhaps, with this court's decision in *Hull.* That showing, if made, would not entitle the Sears to mandamus relief. If we were to adopt the Sears' argument, virtually any citizen could challenge any action of any public officer under the mandamus statute by claiming that the officer has failed to uphold or fulfill state or federal law, as interpreted by the dissatisfied plaintiff. Such a result would be inconsistent with section 12–2021, which limits a cause of action to beneficially interested parties who seek to compel a public officer to perform "an act which the law specially imposes as a duty resulting from an

office." A.R.S. § 12–2021; *see Board of Educ.,* 109 Ariz. at 344, 509 P.2d at 614. We conclude that the Sears' action is not in the nature of mandamus and therefore A.R.S. § 12–2021 does not apply.

### III.

¶ 15  The Sears further argue that they have standing to bring this action, even apart from mandamus principles, and that, in any event, this court should waive the standing requirement because of the important public issues they raise.

### A.

¶ 16  To gain standing to bring an action, a plaintiff must allege a distinct and palpable injury. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). An allegation of generalized harm that is shared alike by all or a large class of citizens generally is not sufficient to confer standing. *Id.* at 499, 95 S.Ct. at 2205.[6]

¶ 17  The Sears fail to allege harm of the nature required to achieve standing. They allege that they live in northeast Phoenix, two miles from the Scottsdale city limits, and that the proposed gaming, the nearest location of which would be 3.2 miles from their children's school, will "expose their children to conduct contrary to the values ... which they wish to instill in their children." They further allege that such gaming will result in "urban crowding, traffic and stresses which will detract from the quality of their immediate community." Finally, the Sears allege that the immediate community surrounding the proposed casino locations near Scottsdale will suffer economic loss as a result of compulsive gamblers' attendant criminal activity and inability to remain gainfully

---

**6.** See also *Detroit Fire Fighters Ass'n v. City of Detroit,* 449 Mich. 629, 537 N.W.2d 436, 438 (1995) (stating that to have standing to bring action challenging mayor's refusal to spend appropriated money, plaintiffs must show that "a substantial interest of the litigant will be detrimentally affected in a manner different from the public at large"); *Jenkins v. Swan,* 675 P.2d 1145, 1149 (Utah 1983) ("We will not entertain generalized grievances that are more appropriately directed to the legislative and executive branches of the state government."); *cf. State ex rel. Gebhardt v. Superior Court,* 15 Wash.2d 673, 131 P.2d 943, 947 (1942) ("It is ... a well recognized principle that public wrongs or neglect or breach of public duty cannot be redressed in a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury in common with the public generally.").

employed or to provide family support. Even accepting plaintiffs' allegations as true, we conclude they have alleged only generalized harm rather than any distinct and palpable injury.

**B.**

¶ 18 The Sears alternatively argue that they have standing under Arizona's law of nuisance and zoning. Even were we to ignore the fact that the Sears did not bring this case as a nuisance or zoning action, however, we would conclude they lack standing.

¶ 19 To achieve standing in an action for public nuisance, a plaintiff must show that the defendant's conduct caused "damage special in nature and different in kind from that experienced by the residents of the city in general." *Armory Park Neighborhood Ass'n v. Episcopal Community Servs. in Ariz.*, 148 Ariz. 1, 5, 712 P.2d 914, 918 (1985). The two cases the Sears rely upon demonstrate this rule of law and foreclose the argument that they have standing under nuisance or zoning law.

¶ 20 In *Armory Park*, a neighborhood association brought an action on behalf of the neighborhood homeowners to enjoin as a public nuisance the operation of a food distribution center located in the neighborhood. *Id.* at 2, 712 P.2d at 915. The center regularly attracted transients, who "frequently trespassed onto residents' yards, sometimes urinating, defecating, drinking and littering on the residents' property." *Id.* at 3, 712 P.2d at 916. We held that the alleged damage was different in kind from that experienced by the residents of the city in general; therefore, the residents had standing to

bring the nuisance action. *Id.* at 5, 712 P.2d at 918.

¶ 21 Similarly, in *Buckelew v. Town of Parker*, 188 Ariz. 446, 937 P.2d 368 (App. 1996), a landowner brought suit against the town zoning board to cure a zoning violation on property adjacent to the plaintiff's. The plaintiff alleged that he suffered special damage caused by the adjacent property's illegal use in the form of "noise, threats of violence, increased litter, health and fire code violations, increased danger of crime, and the destruction of his personal property." 188 Ariz. at 449, 937 P.2d at 371. The court found standing because the plaintiff alleged harm distinct from that suffered by the general public, notwithstanding that others in the plaintiff's immediate neighborhood suffered the same injury as the plaintiff. *Id.* at 452, 937 P.2d at 374.

¶ 22 Neither *Armory Park* nor *Buckelew* furthers the Sears' argument, because the facts they allege to show that harm will result from execution of the compact are, as a matter of law, not sufficient to establish that the Sears, either by themselves or with others, will suffer any special injury.[7]

**C.**

¶ 23 The Sears further argue that they have standing to challenge the constitutionality of A.R.S. §§ 5–601 and 5–601.01 on grounds that the statutes violate the Special Laws Clause of the Arizona Constitution and the equal protection clauses of the state and federal constitutions.[8] To have standing to bring a constitutional challenge, however, a plaintiff must allege injury resulting from the putatively illegal conduct. *State v. Herrera*, 121 Ariz. 12, 15, 588 P.2d 305, 308

---

7. The Sears also argue that they have standing because they meet the criteria for standing in federal court. Because the Sears have not alleged harm that is particular to them or that is any different from the community in general, we think it unlikely that they have standing to proceed in federal court. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (stating that, to gain standing, a plaintiff must allege an injury that is personal and individualized to the plaintiff); *Metropolitan Wash. Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264–65, 111 S.Ct. 2298, 2306, 115

L.Ed.2d 236 (1991) (finding personal injury to plaintiff in the form of "increased noise, pollution, and danger of accidents," as a result traceable to defendant's conduct; plaintiffs resided under flight paths to and from airport controlled by defendant). In any event, their argument does not affect this action, in which we hold that they do not have standing to challenge the Governor's action in state court.

8. Ariz. Const. art. IV, pt. 2, § 19; Ariz. Const. art. II, § 13; U.S. Const. amend. XIV, § 1.

(1978). Thus, the Sears must show that they have been injured by the alleged equal protection or special laws violation. They fail to make this showing. The Sears do not assert that the statutes discriminate in favor of some person or persons or against the Sears, thereby depriving them of the opportunity to conduct gaming that they otherwise would conduct. Rather, they object to any law authorizing anyone to engage in such gaming. Thus, the Sears have not alleged any injury that resulted from the alleged denial of equal protection of the laws.

### D.

¶ 24 Finally, the Sears argue that notwithstanding a determination that they lack standing, this court should waive the requirement of standing because of the great public importance of the issues presented by their claims. Because our state constitution does not contain a "case or controversy" provision analogous to that of the federal constitution, we are not constitutionally constrained to decline jurisdiction based on lack of standing. However, Arizona courts consistently have required as a matter of judicial restraint that a party possess standing to maintain an action. *See Armory Park,* 148 Ariz. at 6, 712 P.2d at 919; *Herrera,* 121 Ariz. at 15–16, 588 P.2d at 308–09; *Alliance Marana v. Groseclose,* 191 Ariz. 287, 289, 955 P.2d 43, 45 (App.1997); *see also Dail v. City of Phoenix,* 128 Ariz. 199, 624 P.2d 877 (App. 1980) (affirming summary judgment against plaintiff because plaintiff did not have standing as a taxpayer or resident to challenge a municipal contract). The requirement is important: the presence of standing sharpens the legal issues presented by ensuring that true adversaries are before the court and thereby assures that our courts do not issue mere advisory opinions. *Armory Park,* 148 Ariz. at 6, 712 P.2d at 919.

¶ 25 Although, as a matter of discretion, we can waive the requirement of standing, we do so only in exceptional circumstances, generally in cases involving issues of great public importance that are likely to recur. The paucity of cases in which we have waived the standing requirement demonstrates both our reluctance to do so and the narrowness of this exception.

¶ 26 In *Rios v. Symington,* 172 Ariz. 3, 833 P.2d 20 (1992), we accepted jurisdiction notwithstanding the existence of "potential standing issues." In that case, the President of the State Senate brought a special action challenging the constitutionality of the Governor's use of the line item veto. The action therefore involved a "dispute at the highest levels of state government," and the issues were substantial and presented matters of first impression in Arizona. 172 Ariz. at 5, 833 P.2d at 22.

¶ 27 Similarly, in *Goodyear Farms v. City of Avondale,* 148 Ariz. 216, 714 P.2d 386 (1986), we considered the merits of the petitioners' action, without addressing whether they had standing to challenge the validity of a municipal annexation ordinance. The action required us to decide whether the Arizona statute governing procedures for municipal annexation violated the equal protection clauses of the federal and state constitutions. Hence, the action directly raised issues of great public importance that were likely to recur. 148 Ariz. at 217 n. 1, 714 P.2d at 387 n. 1. ¶

¶ 28 *State v. B Bar Enterprises,* 133 Ariz. 99, 649 P.2d 978 (1982), a case relied upon by the Sears, actually involved circumstances quite different from those of this action. In *B Bar Enterprises,* the appellants, owners of "massage parlors," challenged a public nuisance statute on grounds that the statute both unlawfully infringed their right to sexual privacy and deprived them of procedural and substantive due process. Neither the parties nor the court questioned appellants' standing to raise the due process challenges. Although the appellants apparently lacked standing to assert the privacy claim, we considered that claim along with the due process claims. The challenge in *B Bar Enterprises,* as opposed to that asserted here, not only occurred in conjunction with a constitutional claim properly argued by the appellants, but also required us to determine the constitutionality of an Arizona statute that had not previously been interpreted. We are hard-pressed to find other examples of this court's

willingness to disregard the important requirement of standing.[9]

■ ¶ 29 Unlike those unique cases discussed above, this action does not present issues of such great public importance that we should waive standing. Essentially the Sears allege that the proposed gaming activities will result in the deterioration of their quality of life. This alleged injury, they argue, stems from the State's violations of IGRA, as interpreted by the Sears, and of alleged violations of the state and federal constitutions caused by the State's entering the standard gaming compact with the Tribe. In *Hull*, this court considered some of the challenges made here by the Sears. The remaining issues, which essentially reflect the Sears' opposition to gaming and their interpretation of the statutes involved, are not of such great moment or public importance as to convince us to consider this challenge to executive conduct.

¶ 30 Neither does the New Mexico Supreme Court's decision in *New Mexico ex rel. Clark v. Johnson*, 120 N.M. 562, 904 P.2d 11 (1995), persuade us that we should waive standing. In *Johnson*, two state legislators and a private citizen brought a mandamus action seeking to prohibit the governor of New Mexico from implementing gaming compacts entered by the governor with various tribes. The petitioners asserted that the governor's execution of the compacts violated the state constitutional provision on separation of powers because he attempted to exercise legislative authority by committing the state to the compacts. 904 P.2d at 15. In contrast to Arizona, however, neither the legislature nor the citizens of New Mexico had expressly delegated to the governor authority to enter tribal gaming compacts on the state's behalf. The petitioners' claims therefore presented "issues of constitutional and fundamental importance" with respect to separation of powers required by the state constitution. *Id.* at 18. Because Arizona expressly authorized the Governor to execute the standard gaming compacts,[10] the serious constitutional issues that gave rise to the *Johnson* court's decision to confer standing do not exist here.[11]

9. The Sears cite *Fraternal Order of Police Lodge 2 v. Phoenix Employee Relations Board*, 133 Ariz. 126, 650 P.2d 428 (1982), as additional support for the proposition that this court may disregard the doctrine of justiciability, of which standing is a part, when deciding issues of great public importance. In *Fraternal Order*, we held that although the issue on appeal was moot, we nonetheless would consider it because of the impact the resolution likely would have on all Phoenix municipal employees and residents and because the issue was likely to recur. 133 Ariz. at 127, 650 P.2d at 429. Although our state courts have decided moot issues on occasion, they have done so generally only in cases presenting issues of great public importance that are likely to recur, or issues that evade review. *See Big D Constr. Corp. v. Court of Appeals*, 163 Ariz. 560, 563, 789 P.2d 1061, 1064 (1990) (deciding the state constitutionality of Arizona's bid preference statute). Like *B Bar Enterprises* and *Goodyear Farms*, in which the challengers arguably lacked standing, other Arizona cases in which the court decided moot issues involve fundamental questions of constitutional or statutory construction. *See, e.g., Camerena v. Department of Pub. Welfare*, 106 Ariz. 30, 470 P.2d 111 (1970) (deciding the constitutionality of procedure for terminating public assistance payments); *State v. Superior Court*, 104 Ariz. 440, 454 P.2d 982 (1969) (interpreting Arizona's rape statute). As we explain elsewhere in this opinion, this case does not raise fundamental questions of statutory construction or of the constitutionality of a statute or government action.

10. A.R.S. § 5–601.01.A provides:

Notwithstanding any other law or the provisions of § 5–601, *the state, through the governor,* shall enter into the state's standard form of gaming compact with any eligible Indian tribe that requests it.
(Emphasis added.)

11. We are not alone in our reluctance to waive standing. The decisions of other jurisdictions in which courts have waived the requirement of standing or conferred standing reveal a commonality of issues of constitutional or great public importance. *See, e.g., Management Council of the Wyo. Legislature v. Geringer*, 953 P.2d 839 (Wyo.1998) (whether governor had "constitutional authority to veto portions of a bill which makes appropriations, but which does not make any appropriation in the portion of the bill that is vetoed"; plaintiffs were members of the state legislature); *Hawai'i ex rel. Bronster v. Yoshina*, 84 Hawai'i 179, 932 P.2d 316 (1997) (whether the state constitutional notice requirements were met with respect to proposed constitutional amendments; attorney general brought action, which raised issues likely to recur); *Detroit Fire Fighters Ass'n v. City of Detroit*, 449 Mich. 629, 537 N.W.2d 436 (1995) (whether mayor had discretion as to whether to spend money appropriated by city council; issue was significant to

¶ 31 We conclude that the Sears' action does not raise issues sufficiently important to bring this action within the narrow boundaries that justify a waiver of standing.

## IV.

¶ 32 For the foregoing reasons, we reverse the judgment in favor of the Sears and remand to the trial court to dismiss the action based on the Sears' lack of standing. Accordingly, we also reverse the trial court's award of attorneys' fees in favor of the Sears.

ZLAKET, C.J., and FELDMAN and MARTONE, JJ., concur.

JONES, Vice Chief Justice, specially concurring:

I concur in the judgment and rationale of the court. I write separately, however, to remind the parties that today's opinion, once again, does not resolve the federal question identified and discussed in the concurring opinion in *Salt River Pima–Maricopa Indian Community v. Hull*, 190 Ariz. 97, 105, 945 P.2d 818, 826 (1997). That discussion, though still valid, need not be repeated here.

The issue, briefly stated, is whether IGRA authorizes the tribe, via state compact, to conduct certain forms of Class III gaming on tribal land in spite of Arizona's long-standing prohibition against such gaming on non-tribal land.

In even simpler terms, the issue is whether the state may approve, and whether the tribe may conduct, gaming activity which the state, by law, has otherwise declared illegal. Plaintiffs raised the issue, but the court holds that plaintiffs lack judicial standing to bring the action. Accordingly, the court must dismiss the case without reaching the controlling federal question.

public and likely to recur); *Madden v. Township of Delran*, 126 N.J. 591, 601 A.2d 211 (1992) (whether system of attorney representation for indigent defendants was constitutional; court declined to address defendant's argument that plaintiffs lacked standing because the issues presented were of great public importance); *Burns v. Sundlun*, 617 A.2d 114 (R.I.1992) (whether state statutes required public approval by way of referendum before state could license simulcasting of out-of-state programs in existing gambling facilities); *Wyoming ex rel. Wyo. Ass'n of Consulting Eng'rs & Land Surveyors v. Sullivan*, 798 P.2d 826 (Wyo.1990) (whether state statute was constitutional; court declined to decide whether plaintiffs lacked standing); *New Mexico ex rel. Sego v. Kirkpatrick*, 86 N.M. 359, 524 P.2d 975 (1974) (whether governor's exercise of "line-item veto" power was constitutional); *Washington Natural Gas Co. v. Public Util. Dist. No. 1*, 77 Wash.2d 94, 459 P.2d 633 (1969) (whether public utility's offering of inducements to its customers to use electricity as opposed to natural gas was unconstitutional or in violation of state law; issues directly involved "the generation, sale and distribution of electrical energy within the state" and would "immediately affect the management and operation of public utility districts and other municipal corporations" within the state).