JUSTICE BOLICK, concurring.
 

 ¶ 25 I agree completely with the Court's opinion but write separately to question our continued adherence to part of the political question doctrine that does not appear to comport with foundational constitutional principles.
 

 ¶ 26 We decide this case based on the familiar doctrine that "a non-justiciable political question is presented when 'there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it.' "
 
 Supra
 
 ¶ 9 (quoting
 
 Kromko
 
 ,
 
 216 Ariz. at
 
 192 ¶¶ 11-12,
 
 165 P.3d at
 
 170 ). For purposes of this opinion, I will refer to the first part of the test as the "textual requirement" and the second as the "prudential requirement." I agree with the Court that the question here survives both parts of the test and therefore presents a justiciable case.
 

 ¶ 27 It appears that we largely adopted the political question doctrine, or at least the prudential requirement, as received wisdom from the United States Supreme Court.
 
 See, e.g.
 
 ,
 
 Kromko
 
 ,
 
 216 Ariz. at
 
 192-93 ¶¶ 11-12,
 
 165 P.3d at
 
 170-71 (citing to United States Supreme Court case law and the "federal political question doctrine"). We should welcome wisdom from any source, but if we embrace it we should make sure it is, indeed, wisdom. The textual requirement, which forbids the judiciary from ruling on matters constitutionally entrusted to the political branches of government, is central to our system of separation of powers. But the judicially created prudential requirement, as a standalone doctrine, does quite the opposite by abdicating the judiciary's central role of constitutional interpretation.
 

 ¶ 28 The textual requirement of the political question doctrine is deeply embedded in our constitutional design, but the prudential requirement is not. The Constitution's framers intended that courts would not decide matters entrusted to other branches of government, but equally intended that the courts and not the other branches would determine respective constitutional boundaries. In
 
 The Federalist No. 78
 
 , Alexander Hamilton articulated a bright line of demarcation between the two, recognizing hegemony of the political branches in matters assigned to their discretion, but recognizing the Constitution as "fundamental law" and that it "belongs to [the judiciary] to ascertain its meaning."
 
 The Federalist No. 78
 
 , at 430 (Alexander Hamilton) (Gideon ed., 2006). Hamilton described the judiciary as "the weakest of the three departments" for it possesses none of the powers assigned to the other branches.
 
 Id.
 
 at 429. But "the courts were designed to be an intermediate body between the people and the legislature, in order, among other things, to keep the latter within the limits assigned to their authority."
 
 Id.
 
 at 430. By contrast, "[i]f it be said that the legislative body are themselves the constitutional judges of their own powers, ... it may be answered, that this cannot be the natural presumption, where it is not to be collected from any particular provisions in the constitution."
 
 Id.
 
 Constitutional limits "can be preserved in practice no other way than through the medium of courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing."
 
 Id.
 
 at 429.
 

 ¶ 29 That understanding was reflected in
 
 Marbury v. Madison
 
 , in which the Supreme Court set forth the judiciary's role in constitutional adjudication and first articulated the political question doctrine.
 
 5 U.S. 137
 
 , 165-66, 176-78,
 
 1 Cranch 137
 
 ,
 
 2 L.Ed. 60
 
 (1803). The Court recognized that under the Constitution, "the President is invested with certain important political powers, in the exercise of which he is to use his own discretion, and is accountable only to his country in his political character, and to his own conscience."
 

 Id.
 

 at 165-66
 
 . Actions pursuant to such discretion "can never be examinable by the courts."
 

 Id.
 

 at 166
 
 . But in matters not expressly delegated to the other branches, the Court made clear that the judiciary must interpret constitutional boundaries.
 

 Id.
 

 at 176-78
 
 . "It is emphatically the province and duty of the judicial department to say what the law is," and
 constitutional interpretation "is of the very essence of judicial duty."
 

 Id.
 

 at 177-78
 
 .
 

 ¶ 30 As the Court declared in
 
 Marbury
 
 , "[i]t cannot be presumed that any clause in the constitution is intended to be without effect; and therefore such construction is inadmissible, unless the words require it."
 

 Id.
 

 at 174
 
 . Leaving interpretation to the other branches renders constitutional rights and limits "mere surplusage" and "entirely without meaning."
 

 Id.
 

 There are no inkblots in the Constitution.
 
 See
 
 Robert H. Bork,
 
 The Tempting of America
 
 166 (1990) (examining the Ninth Amendment and concluding that a "provision whose meaning cannot be ascertained is precisely like a provision that is written in Sanskrit or is obliterated past deciphering by an ink blot. No judge is entitled to interpret an ink blot on the ground that there must be something under it."). When the judiciary fails to interpret and enforce constitutional rights and limits, it shrinks from its central duty and drains the Constitution of its intended meaning.
 

 ¶ 31 The prudential requirement of the political question doctrine traces its origins to New Deal jurisprudence but "was given its canonical modern formulation" in
 
 Baker v. Carr
 
 ,
 
 369 U.S. 186
 
 ,
 
 82 S.Ct. 691
 
 ,
 
 7 L.Ed.2d 663
 
 (1962).
 
 See
 
 Joshua S. Stillman, Note,
 
 The Costs of "Discernible and Manageable Standards" in
 
 Vieth
 
 and Beyond
 
 ,
 
 84 N.Y.U.L. Rev. 1292
 
 , 1298 (2009). In
 
 Baker
 
 , the Supreme Court set forth six bases for non-justiciability of a case as presenting a political question.
 
 369 U.S. at 217
 
 ,
 
 82 S.Ct. 691
 
 . The first two are whether there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department" or "a lack of judicially discoverable and manageable standards for resolving it."
 

 Id.
 

 While the latter four are rarely invoked as bases for non-justiciability, the first two typically are paired as a unified test, as we have applied it here. But the two requirements are in considerable tension. The first instructs the courts, quite properly, not to intrude in a matter constitutionally entrusted to another branch of government. The second implies that the matter is
 
 not
 
 constitutionally entrusted to another branch, but that for prudential reasons we should not decide it anyway, leading to the inevitable consequence that another branch of government will decide the constitutional limits of its own power. As noted above, the framers invested the judiciary with the duty to make sure that would never happen.
 
 See
 

 Marbury
 
 ,
 
 5 U.S. at 176-78
 
 .
 

 ¶ 32 In interpreting the Arizona Constitution and determining access to our courts, this Court is free, of course, to adopt or decline to adopt prudential doctrines from the Supreme Court.
 
 See, e.g.
 
 ,
 
 Sears v. Hull
 
 ,
 
 192 Ariz. 65
 
 , 71 ¶¶ 24-25,
 
 961 P.2d 1013
 
 , 1019 (1998) ("Because our state constitution does not contain a 'case or controversy' provision analogous to that of the federal constitution, we are not constitutionally constrained to decline jurisdiction based on lack of standing."). In my view, especially where vindication of individual rights is concerned, we should not adopt prudential doctrines that restrict access to the courts or judicial resolution of constitutional issues without careful consideration. The textual requirement of the political question doctrine plainly accords with the Arizona Constitution, which commands that our branches of government "shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." Ariz. Const. art. 3. But the prudential requirement, which avoids constitutional interpretation and enforcement, seems at odds with any constitution that establishes individual rights and limits governmental powers.
 

 ¶ 33 The United States Supreme Court has rarely used the prudential requirement of the political question doctrine as a standalone basis for a non-justiciability ruling.
 
 See
 
 Stillman,
 
 supra
 
 at 1299 (stating that the plurality opinion in
 
 Vieth v. Jubelirer
 
 ,
 
 541 U.S. 267
 
 ,
 
 124 S.Ct. 1769
 
 ,
 
 158 L.Ed.2d 546
 
 (2004), was "unique" in that "it relied on the lack of judicially discernible and manageable standards as an independently sufficient rationale" under the political question doctrine "without any genuine argument that the issue was textually committed to a coordinate federal branch");
 
 see also
 

 Nixon
 
 ,
 
 506 U.S. at 228-30
 
 ,
 
 113 S.Ct. 732
 
 (holding that the question was non-justiciable because it was textually delegated to another branch and reasoning
 that "the use of the word 'try' in the first sentence of the Impeachment Trial Clause lacks sufficient precision to afford any judicially manageable standard of review of the Senate's actions").
 

 ¶ 34 This Court applied the prudential requirement doctrine to hold an issue non-justiciable in
 
 Kromko
 
 ,
 
 216 Ariz. at
 
 194 ¶ 21,
 
 165 P.3d at 172
 
 . In so doing,
 
 Kromko
 
 quoted
 
 Nixon
 
 for the proposition that "the concept of textual commitment to a coordinate political department is not completely separate from the concept of a lack of judicially discoverable and manageable standards," as "the lack of judicially manageable standards may strengthen the conclusion that there is a textually demonstrable commitment to a coordinate branch."
 
 Kromko
 
 ,
 
 216 Ariz. at
 
 193 ¶ 14,
 
 165 P.3d at 171
 
 (quoting
 
 Nixon
 
 ,
 
 506 U.S. at 228-29
 
 ,
 
 113 S.Ct. 732
 
 ). The Court went on to cite both lack of judicially manageable standards and textual commitment to other branches of government to support its decision.
 

 Id.
 

 at 193 ¶¶ 13-14, 194 ¶ 21,
 
 165 P.3d at 171, 172
 
 .
 

 ¶ 35 Whether the prudential requirement standing alone renders an issue non-justiciable thus remains an open question. Regardless, in an appropriate case, I would reexamine the prudential requirement of our political question doctrine to determine whether it comports with our constitutional design. For as the opening words of our Declaration of Rights proclaim: "A frequent recurrence to fundamental principles is essential to the security of individual rights and the perpetuity of free government." Ariz. Const. art. 2, § 1.