821 P.2d 240

**Billie Jane WEST,**
**Plaintiff/Appellee/Cross–Appellant,**

v.

**SUNDANCE DEVELOPMENT**
**COMPANY, Defendant/Appellant/Cross–**
**Appellee.**

No. 2 CA–CV 90–0305.

Court of Appeals of Arizona,
Division 2, Department B.

June 27, 1991.

Review Denied Jan. 7, 1992.*

* GORDON, C.J., of the Supreme Court, did not participate in the determination of this matter.

Rake, Downey, McGovern & Shorall, P.C. by Thomas P. McGovern and Copple, Chamberlin & Boehm, P.C. by Scott E. Boehm, Phoenix, for plaintiff/appellee/cross-appellant.

Jennings, Kepner & Haug by Craig R. Kepner and Randy L. Sassaman, Phoenix, for defendant/appellant/cross-appellee.

## OPINION

HOWARD, Presiding Judge.

Sundance Development Company (Sundance) has appealed from a $650,000 personal injury judgment in favor of Billie Jane West. The accident occurred on a dirt road known as Whispering Pines Drive which was located within the Solitude Pines Subdivision of Gila County near Pine, Arizona. Sundance was the developer of the subdivision and shortly after it acquired land, it rough-cut the road through the forest so that workers and the sales people had access to the subdivision.

Prior to 1985, Sundance prepared plans and specifications for the subdivision and

submitted those documents to Gila County for approval. Among the proposals contained in the plans and specifications was a promise by Sundance to develop Whispering Pines Drive in conformity with county standards. In light of that promise, Gila County approved the Sundance plans and recorded its plat.

Also prior to 1985, Sundance filed a mandatory Arizona subdivision public report pursuant to A.R.S. §§ 32–2181 and 32–2183. Among its representations in that recorded document were: (1) Sundance would provide all-weather road access to all subdivision lots; (2) Sundance would construct all public roads on or adjacent to the subdivision in conformance with minimum Gila County standards for paved roads; (3) Sundance would build all streets within the subdivision in accordance with the minimum standards of Gila County; and (4) Sundance would surface all the subdivision streets with asphalt by August 15, 1985.

Prior to 1985, Sundance did nothing more than blade the road on occasion and remove large pieces of rock from the roadway. At some point long before West's accident in 1987, Sundance stopped maintaining the road at all.

On December 9, 1985, Sundance granted Gila County a written "permit for access" to the subdivision for the purpose of performing courtesy blading and road maintenance through the winter of 1985–1986. The permit identified Sundance as the owner of the property and it was granted to the county after the roads were dedicated by the filing of the approved plat. This permit was also expressly contingent upon Sundance holding and saving Gila County free from damages.

Gila County continued its occasional courtesy blading of Whispering Pines Drive even after the permit for access expired. In fact, the county bladed the road within a day before West's accident.

Sundance was always aware that its road did not meet minimum county standards. It also knew that although numerous people in the area were using the rough-cut roadway, there were no signs, warnings, or other restrictions advising the public that Whispering Pines Drive was hazardous and not in compliance with county standards.

Because Sundance failed to perform the promises of its dedication, Whispering Pines Drive was never accepted into the Gila County road system.

West lived in a subdivision of Gila County which was adjacent to Solitude Pines Subdivision. Whispering Pines Drive was one of the roads she could travel to and from her house. On the evening of March 31, 1987, she had organized and attended a chamber of commerce dinner in Strawberry, Arizona. She arrived sometime after 6 p.m. and departed for home at approximately 9 p.m. Between 7 and 9 p.m. she drank two glasses of white wine with her dinner. The glasses could hold up to six ounces of liquid, but each was only two-thirds full of wine and she had also added two or three spoonfuls of ice to each glass. The accident occurred on the way home from the dinner when the car which West was driving at a speed of approximately 20 to 25 miles per hour struck a large rock which had been left in the roadway. The rock bent a right front wheel and almost immediately flattened the tire, causing her car to spin, slide off the left side of the road, skid down the embankment and finally come to rest after slamming into a large boulder.

The accident broke West's neck in three places and caused the disk between her C5–C6 vertebrae to slip out of alignment. Eventually it became necessary to stabilize the vertebrae by means of a bone plug which was chiseled from her hip and implanted into her spine. The disk between the C5 and C6 vertebrae was also removed during this surgery. The neck bones were fused together with the bone plug and a metal plate was then permanently screwed down over the entire fusion.

West was hospitalized for two weeks and had to wear a series of neck braces for about three months. Her medical bills for all of these procedures exceeded $22,000 and a detailed itemization of them was admitted at trial without objection. Sundance also stipulated that all of those medical bills were reasonable, necessary, and

incurred as a result of the injuries West sustained in the accident.

West improved slightly for a short while but the pain in her neck and upper extremities eventually returned and she had to take pain medication. She also experienced a marked decrease in the range of motion in her neck and her ability to flex and extend were reduced significantly and so was her ability to rotate her head and move it from side to side. One of West's doctors, orthopedic surgeon Dr. Scott, testified that West was having increased pain because the fusion of the C5–C6 joint caused substantial added stress on the C4–C5 joint and that the stress eventually results in slippage of the disk between the C4–C5 vertebrae. He pointed out that such slippage was already apparent on her x-rays. He emphasized that the only way to correct the problem was another surgery to fuse the C4–C5 joint by the same procedure used to fuse the C5–C6 joint.

Dr. Scott added that West was also at risk of substantial future problems regardless of whether she had another operation. He testified that her pain, inflammation and arthritis would accelerate and that she would never regain the full range of motion in her neck. Dr. Scott concluded that West had a 24 percent permanent impairment as a result of the accident.

Dr. Scott further stated that when West's pain becomes too severe for her, the only option may be a surgical fusion of the C4–C5 vertebrae.

West recognized that her work as a housekeeper was accelerating her problems but she testified that she had no choice but to continue working because she had no other source of income other than her housecleaning money. She acknowledged that her continuing to work would probably necessitate further surgery to fuse her C4–C5 vertebrae.

Sundance tried to show at trial that West was driving under the influence of alcohol and that this was a proximate cause of the accident. However, the investigating officer and both parties' experts agree that whether West was impaired would not affect her ability to avoid the rock. By the time West's headlights illuminated the rock, the reaction time of even a sober person would not have permitted stopping the vehicle prior to impact. Furthermore, the only evidence was that West had two to three glasses of wine.[1] The investigating officer stated that West showed no signs of impairment. According to him her eyes and speech were clear, she had no trouble communicating, and there was no odor of alcohol. According to Sundance's expert, even if West had ingested three six-ounce glasses of wine, her blood alcohol content would have been .074 percent and according to him some people are impaired at that level and some people are not, but he had no way of knowing about West. Sundance's expert, by reducing West's body weight by 10 pounds, shortening the period in which she was drinking, and increasing the amount of alcohol consumption, calculated that West's blood alcohol content at the time of the accident was .091 percent. To reach that level, however, West would have had to have swallowed 17 ounces of wine between 7 p.m. and 8:15 p.m. on the day of the accident. This expert conceded that even if West had three six-ounce glasses of wine filled two-thirds full, she would only have ingested 12 ounces of wine which would have given her a blood alcohol content at the time of the crash at between .04 and .05 percent.

The trial court precluded Sundance's expert from answering questions about the hypothetical effects of drinking more than 17 ounces of wine between 7 p.m. and 8:15 p.m. on the day of the accident.

At close of the evidence, Sundance moved for a directed verdict on the recovery of damages for future medical expenses, which motion was denied. The jury returned a verdict in favor of West for $700,000 and, after crediting Sundance with $50,000 paid by Gila County in a settlement with West, the trial court entered an amended judgment in the amount of $650,000.

---

1. Although West testified that she had only two glasses of wine, the hospital records contain a statement that West said she had two to three glasses of wine.

Sundance moved for a new trial on the ground, inter alia, that the verdict was excessive and not justified by the evidence. The trial court granted a new trial conditioned upon West accepting a remittitur to an amount equal to the present-day value of a stream of income of $25,000 per year for 26 years plus $50,000 less a $50,000 credit for plaintiff's settlement with Gila County. The trial court subsequently rescinded this ruling, concluding that an award for future pain and suffering did not need to be reduced to present-day value.

## THE APPEAL

### I.

The trial court ruled as a matter of law that Sundance had a duty to maintain Whispering Pines Drive in a reasonably safe condition and that it was subject to liability for any negligence on the part of Gila County as a result of its courtesy blading of the road. Sundance contends this was erroneous because Gila County owned and possessed Whispering Pines Drive and because Sundance was not in possession and had no duty to maintain Whispering Pines Drive. We do not agree.

■ Although the recording of the plat acts as a granting of a fee interest in the streets to the county, such streets are not part of the county maintenance until the streets are completed in accordance with the approved plat and written specifications made by the county and until the streets have been accepted by the county. A.R.S. § 11–806.01(F) and (I). In addition, no public monies can be expended for maintenance of a road constructed and opened after 1975, not within the limits of an incorporated city or town, until the streets are laid out and constructed without cost to the county in accordance with the approved plat. A.R.S. § 18–207.

■ The clear import of these statutes is that until such time as the subdivision streets have been accepted by the county, the subdivider is responsible for their construction, maintenance, and for the safety of the members of the public who may be using them during this interim period of time. This means that the subdivider must make these streets reasonably safe for the traveling public.

■ Furthermore, since Sundance was under a duty to construct or maintain the street, it cannot escape liability by claiming that Gila County was negligent in blading the road and leaving a boulder on the roadway. Restatement (Second) of Torts § 418(1) (1965) provides in that regard:

> One who is under a duty to construct or maintain a highway in reasonably safe condition for the use of the public, and who entrusts its construction, maintenance, or repair to an independent contractor, is subject to the same liability for physical harm to persons using the highway while it is held open for travel during such work, caused by the negligent failure of the contractor to make it reasonably safe for travel, as though the employer had retained the work in his own hands.

■ Sundance further contends that since it posted the performance bond required by A.R.S. § 11–806.01(G), it had no obligation for public safety on the subdivision streets because the statute gives it the option of either doing the work or posting a bond. We do not agree. The statute states:

> G. ... The regulation shall require the posting of performance bonds, assurances or such other security as may be appropriate and necessary to assure the installation of required street, sewer, electric and water utilities, drainage, flood control and improvements meeting established minimum standards of design and construction.

The statute does not give the developer any alternatives, and the bond is only as security in case the developer fails to make the improvements or does not make them properly. It does not take the obligation to perform the work away from the developer, and if the county has to take over the work or correct the work because the developer is unable to do so, the county is acting for and on behalf of the developer when it does so, and the developer is not

relieved of any of the vicarious liability imposed upon it by Restatement (Second) of Torts § 418.

## II.

 Sundance argues that the trial court erred by not letting its expert testify about the effect of alcohol on West if she had consumed more than 17 ounces of wine. It contends the jury did not have to believe her testimony as to the amount she drank. We do not agree with this bootstrap argument. There was no evidence which suggested that West had consumed over 17 ounces. While expert opinion can be based on hypothetical questions, such questions are proper so long as they are based on facts in evidence. *Schmidt v. Gibbons*, 101 Ariz. 222, 418 P.2d 378 (1966). There were no such facts presented here.

## III.

 Sundance asked the trial court to give the following instruction on intoxication that we previously approved in *State v. Grimes*, 160 Ariz. 329, 773 P.2d 227 (App.1989):

> If you find that the plaintiff's control of her automobile was *affected to the slightest degree* by intoxicating liquor, the plaintiff is guilty of driving while under the influence of intoxicating liquors.

160 Ariz. at 329, 773 P.2d at 227 (emphasis added). The trial court declined to give such instruction and instead gave RAJI Negligence 8 instruction as follows: "A person is under the influence of intoxicating liquor when the liquor *impairs* his ability to operate a vehicle." (Emphasis added.) Recommended Arizona Jury Instructions (Civil) (Supp.1988).

Pursuant to Sundance's request, the trial court also instructed the jury on negligence per se and the presumption of intoxication contained in A.R.S. § 28–692.

Sundance maintains the trial court erred in refusing to give its instruction. We do not agree. We see no difference between the word "impairs" and the phrase "affected to the slightest degree." See *Brooks v. State*, 41 Md.App. 123, 395 A.2d 1224

(1979) (impaired means a state less than intoxication where consumption of alcohol has affected one's normal coordination).

## IV.

 Sundance contends that the trial court erred in instructing the jury on future medical expenses because there was no evidence of any need for any such expenses and no evidence as to their cost. We do not agree. Medical expenses regarding a specific surgical procedure may be submitted to the jury if the evidence and its reasonable inferences would support a finding that it is reasonably probable that the surgery will be performed in the future, and where the amount of such future damages has been established with a reasonable certainty. *Griffen v. Stevenson*, 1 Ariz.App. 311, 402 P.2d 432 (1965). West's doctor explained the cause of her continuing neck pain and stated that it could only be relieved by doing the same procedure that had been previously done on the C5–C6 joint. West also recognized that she would probably have to undergo this procedure in order to relieve her pain so she could continue working.

As far as the cost of the procedure was concerned, there was already evidence of what the previous, identical procedure cost and the jury could conclude that in the future the same procedure would at least cost as much.

## V.

 Sundance, in its motion for new trial, contended that the damages were the result of passion or prejudice. The trial court rejected that contention but, sua sponte, reduced the jury's pain and suffering award to present value. The trial court, upon reconsideration, changed its mind and rescinded its ruling. Sundance now contends that this was error and that the trial court should have reduced the verdict to present worth.

There are no Arizona decisions on the issue of the necessity to discount future pain and suffering and we need not decide the issue here because there was only a

general verdict in this case and we have no idea how much was awarded for future pain and suffering.

## THE CROSS–APPEAL

■ During the course of the litigation West served Sundance with a series of requests for admissions pursuant to Ariz. R.Civ.P. 36, 16 A.R.S. Among them were the following:

*Request for Admission No. 5:* Admit that the plaintiff was not negligent in connection with the accident.

*Request for Admission No. 6:* Admit that the vehicle occupied by the plaintiff was lawfully within the road at the time of the collision.

*Request for Admission No. 7:* Admit that plaintiff's vehicle was on the road in compliance with legal requirements.

*Request for Admission No. 8:* Admit that Donald R. First was on the date of the accident a qualified accident investigator employed by the Gila County Sheriff's Office.

*Request for Admission No. 11:* Admit that as a direct and proximate result of the accident, plaintiff Billie Jane West sustained personal injuries which caused plaintiff pain, discomfort, suffering and anxiety.

*Request for Admission No. 12:* Admit that plaintiff Billie Jane West is entitled to general damages from Defendant.

*Request for Admission No. 13:* Admit that as a direct and proximate result of the accident that it is reasonably probable that plaintiff Billie Jane West will incur medical expenses in the future.

*Request for Admission No. 14:* Admit that as a direct and proximate result of the accident plaintiff Billie Jane West has suffered a loss of income.

Sundance refused to admit to any of these requests prior to trial. After each of them was proved by West and the jury returned its verdict in her favor, West filed an application for attorney's fees pursuant to Ariz.R.Civ.P. 37(c), 16 A.R.S. The trial

judge denied West's request on the ground that the requests pertained to "ultimate conclusions" of the case. Rule 36(a) provides in part: "A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact,...."[2] Ariz.R.Civ.P. 36(a), 16 A.R.S. (Supp.1990).

Arizona's rule was amended in 1970 in order to conform to the 1970 amendment of Rule 36(a), Fed.R.Civ.P., 28 U.S.C.A. (Supp. 1991), which it does, except for a minor variance which is not at issue here.[3] As noted in the State Bar Committee Note to the 1970 amendment, the amendment has resolved the conflict in the court decisions as to whether a request calls for a fact or an opinion or for mixed law and fact by making it clear that the request may properly ask for an admission on a matter of opinion as well as matters involving mixed law and fact. The advisory note to the federal rule gives as examples of proper requests an admission that an employee was acting within the scope of his employment (application of the law to the facts) and an admission that "the premises on which said accident occurred, were occupied or under the control" of one of the defendants (an admission involving law as well as fact). 48 F.R.D. 531, 532 (1970).

■ Since 1970, the rule does not permit a party to object to requests for admissions as to matters which the party regards as "in dispute." In its answer the party may deny or give a reason for its inability to deny or admit. The revision also provides:

An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the

---

2. Rule 26(b) sets forth the scope of discovery.

3. Our rule and the federal rule were amended in 1987 to remove gender-specific language but made no substantive changes.

party is insufficient to enable the party to admit or deny.

Ariz.R.Civ.P. 36(a), supra.

When the party who requested an admission under Rule 36, which was denied by the other party, is forced to prove the matter at trial and does so, such party may apply to the court under Rule 37(c) for attorney's fees and costs incurred in making the proof. The court must then, under Rule 37(c), order the payment of such fees and expenses unless the court finds: "(1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit." Ariz.R.Civ.P. 37(c), 16 A.R.S. (Supp.1990).

█ The reason the trial court here refused to grant attorney's fees and costs, that the requests called for "ultimate conclusions," is not a valid reason for denying the request for sanctions. See *City of Rome v. United States*, 450 F.Supp. 378, 383 (D.D.C.1978), *aff'd*, 446 U.S. 156, 100 S.Ct. 1548, 64 L.Ed.2d 119 (1980), and see also, 8 C. Wright & A. Miller, Federal Practice and Procedure § 2255 (1970). As the Federal Advisory Committee Note indicates, however, the amended rule does not authorize requests for admissions of law unrelated to the facts of the case. Thus, an alleged patent infringer's requests for admissions seeking from the patent holder a bold legal conclusion that certain claims were invalid were improper. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co. Inc.*, 130 F.R.D. 92 (N.D.Ind. 1990).

Turning to the requests for admissions at issue, we find that all of the requests except for Nos. 5 and 12, which called for bold legal conclusions unrelated to the facts, were proper, and the trial court should have determined whether the denials were proper under Rule 37(c).

** A Judge of the Pima County Superior Court authorized and assigned to sit as a Judge on the Court of Appeals, Division Two, pursuant to

The order of the trial court denying plaintiff's request for expenses and attorney's fees is reversed and the issue is remanded to the trial court for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

LIVERMORE and JAMES C. CARRUTH **, JJ., concur.