IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PONDEROSA FIRE DISTRICT, a political subdivision of the State of Arizona; UTILITY SOURCE, L.L.C., an Arizona limited liability company; TOWNHOMES AT FLAGSTAFF MEADOWS HOMEOWNERS ASSOCIATION, an Arizona non-profit corporation; FLAGSTAFF MEADOWS PROPERTY OWNERS' ASSOCIATION, an Arizona non-profit corporation; THE FLAGSTAFF MEADOWS UNIT 3 HOMEOWNERS ASSOCIATION, an Arizona non-profit corporation; and BELLEMONT 276 L.L.C., an Arizona limited liability company,
*Plaintiffs/Appellees*,

*v.*

COCONINO COUNTY, ARIZONA, a political subdivision of the State of Arizona; COCONINO COUNTY BOARD OF SUPERVISORS, the duly elected governing board of Coconino County, Arizona; COCONINO COUNTY COMMUNITY DEVELOPMENT, a department of Coconino County, *Defendants/Appellants*.

No. 1 CA-CV 13-0545
FILED 07-22-2014

Appeal from the Superior Court in Coconino County
S0300CV201200366
The Honorable Dan R. Slayton, Judge

**REVERSED AND REMANDED**

COUNSEL

Freeman Huber Law PLLC, Flagstaff
By Shelton L. Freeman and Matthew J. Mansfield
*Counsel for Plaintiffs/Appellees*

Gammage & Burnham PLC, Phoenix
By Cameron C. Artigue and Christopher L. Hering
*Counsel for Defendants/Appellants*

Mangum Wall Stoops & Warden PLLC, Flagstaff
By Michelle D'Andrea
*Counsel for Amicus Curiae City of Flagstaff*

Maricopa County Attorney's Office, Phoenix
By Wayne J. Peck
*Counsel for Amicus Curiae Maricopa County*

Holloway Odegard & Kelly PC, Phoenix
By Ellen M. Van Riper
*Counsel for Amicus Curiae League of Arizona Cities and Towns*

---

## OPINION

Judge Andrew W. Gould delivered the opinion of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maurice Portley joined.

---

**G O U L D**, Judge:

¶1        We are asked to decide whether  Coconino County, Arizona, the Coconino County Board of Supervisors ("Board"), and the Coconino County Community Development Department (collectively "the County") have the discretion to call performance bonds posted by a developer to ensure completion of subdivision improvements pursuant to Arizona Revised Statute ("A.R.S.") section 11-821(C) and Coconino County Subdivision Ordinance No. 82-3 ("Ordinance"), section 4.14(A)(2) (May 3, 1982).  We hold that A.R.S. § 11-821(C) and Ordinance § 4.14(A)(2) allow the County to exercise discretion in deciding when, and under what circumstances, it may call the performance bonds.  Accordingly, we reverse the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

¶2        Empire Residential Construction, L.P. ("Empire") subdivided land and developed Flagstaff Meadows, a residential community, in Coconino County.  The subdivision consists of three Units; Units 1 and 2 contain completed single-family homes and townhomes.  In

2006, Empire applied to the Coconino County Planning and Zoning Commission to develop Unit 3 into a residential community for single-family homes and multiple-family residences. The Board voted unanimously to approve Empire's application.

¶3 On October 17, 2006, the Board issued a resolution approving Empire's proposed Unit 3 preliminary plat, including the requirement that:

> In accordance with Section 4.14 of the *Subdivision Ordinance*, all improvements must be completed prior to submittal of a final plat or a cash deposit, letter of credit, performance bond, or other acceptable financial security shall be required for the costs of any improvements and construction not completed, plus a 10% contingency. This includes, but is not limited to, all roadways, drainage structures, utilities, traffic control signs, street identification signs, fencing, park improvements, pedestrian trails, and landscaping.

Based on the Board's resolution, in October 2007, Empire acquired four subdivision bonds totaling $4,396,241.32. The bonds consisted of $3,364,428.10 for subdivision improvements, $196,998.22 for emergency evacuation route improvements, $660,000.00 for fire station additions, and $174,815.00 for landscaping improvements. The Board approved the final plat in October 2007.

¶4 Empire began construction of the subdivision improvements and, upon completion of the emergency evacuation route improvements, the County released the corresponding $196,998.22 bond. However, before it could complete the remaining subdivision improvements, Empire declared bankruptcy and abandoned Unit 3. At the time Empire abandoned Unit 3, the subdivision's infrastructure was not finished; there were no functional internal roads or utilities. In addition, no construction of homes had begun, and no lots had been sold to consumers. The remaining subdivision bonds totaled more than $4 million.

¶5 Following a series of trustee's sales, Bellemont 276, L.L.C. ("Bellemont") eventually purchased Unit 3 in March 2011 with the intent of constructing residences on the subdivided lots and selling them to the public. Bellemont applied to the County for a building permit to begin construction. Bellemont also requested the County call the outstanding Unit 3 subdivision bonds. Over the next several months, the County negotiated with Bellemont regarding the cost of finishing the Unit 3

improvements; during these negotiations, the County also sought to protect itself from the risk of potential litigation costs that might be incurred in calling the bonds.

¶6        The negotiations did not produce an agreement and the County ultimately passed a resolution not to call the bonds.  In support of this resolution the County found, among other things, that improvements in Unit 3 were "essentially unconstructed," "there [were] no current residents suffering from lack of infrastructure," "the public infrastructure covered by the surety bonds is not needed to serve a substantial public interest," calling the bonds "would primarily benefit only the single current owner of the subdivision property [Bellemont] rather than substantially benefiting the general public or the neighborhood," and that "litigation is likely to result from a call . . . plac[ing] the County general fund at risk."

¶7        Because there was no plan in place to complete the necessary improvements/infrastructure, the County rejected Bellemont's application for a building permit.  In response, Bellemont filed a complaint alleging that it had acquired Unit 3 with the expectation the bonds would be called to pay for the remaining improvements and infrastructure.  Bellemont requested declaratory relief, a writ of mandamus compelling the County to call the bonds, and monetary damages.

¶8        Several parties joined Bellemont as plaintiffs in its complaint, alleging their interests were also harmed by the County's refusal to call the bonds.  Townhomes at Flagstaff Meadows Homeowners Association and Flagstaff Meadows Property Owners' Association ("HOAs"), representing the adjacent lot owners of Units 1 and 2, complained about the undeveloped status of Unit 3.  The HOA's argued they were being denied the right to live in the "completed subdivision" represented in the public report each resident received when purchasing their property.  Ponderosa Fire District ("Ponderosa") asserted it was denied improvements to its fire station that had been included in the Unit 3 final plat.  Utility Source, L.L.C. ("USource") argued that its investment in the infrastructure of Flagstaff Meadows as a whole could not be sustained without completion and occupation of Unit 3 absent a substantial increase in fees for the property owners in Units 1 and 2.

**¶9** Appellees requested a hearing for the County to show cause why Appellees were not entitled to declaratory and mandamus relief.[1] At the hearing, Appellees sought a declaration from the court that the County's duty to call the bond was a mandatory, ministerial act, and, based on this declaration, a writ of mandamus compelling the County to call the bonds. Appellees argued the County lacked discretion to refuse to call the bonds for Unit 3. Appellees conceded that the lots were all owned by Bellemont, and none had been sold or committed to individual homeowners. The County responded that it had the discretion to decide whether to call the bonds. The County also objected, on procedural grounds, to any grant of relief at the show cause hearing.

**¶10** At the conclusion of the hearing, the court granted Appellees' application and ordered the County to (1) adopt a resolution stating the improvements were not finished and (2) send the resolution to the surety. Based on the terms of the surety bonds, this order constituted an order compelling the County to call the bonds.[2]

**¶11** Following the hearing, the court issued a writ of mandamus pursuant to A.R.S. § 12-2021, requiring the County to issue a resolution calling the bonds. The County complied, passing a resolution calling the bonds. After the court entered a judgment with Rule 54(b) language, the County filed a timely notice of appeal.

## DISCUSSION

**¶12** The only claims involved in this appeal are Appellees' claims for declaratory and mandamus relief regarding the County's discretion to call the bonds. We are not asked to decide whether

---

[1] Because Appellees' complaint included a claim for monetary damages under 42 U.S.C. § 1983, the County sought to remove the case to the federal district court. Upon receipt of the County's application for removal, the district court accepted jurisdiction of claims five and six, the claims for monetary damages, and remanded Appellees' claims one through four, the claims for declaratory and injunctive relief.

[2] The surety bonds state: "Surety, upon receipt of a resolution of the Obligee [County] indicating that the improvements have not been installed or completed, will complete the improvements or pay to Obligee [County] such amount up to the Principal amount of this bond which will allow the Obligee [County] to complete the improvements."

Appellees may bring claims for monetary damages based on the County's refusal to call the Unit 3 bonds. Moreover, this case only involves the County's discretion to call the subdivision bonds; it does not address the County's discretion, if any, to discharge, waive, or release the bonds or to use the bond monies for some purpose other than completing the Unit 3 improvements.

## I.      Standard of Review

¶13      We review the construction of statutes and ordinances de novo. *State ex. rel. Montgomery v. Harris*, 234 Ariz. 343, 344, ¶ 8, 322 P.3d 160, 161 (2014); *Files v. Bernal*, 200 Ariz. 64, 66, 22 P.3d 57, 59 (App. 2001).

## II.      Show Cause Hearing

¶14      The County argues the order to show cause procedure used by Appellees was improper because it denied it a full and fair opportunity to conduct discovery and present evidence. *See* Ariz. R. Civ. P. 6(d). However, the County fails to identify what additional discovery or evidence would have been helpful in opposing Appellees' application for declaratory and mandamus relief. Moreover, the issue presented at the show cause hearing involved a pure issue of law concerning the construction of A.R.S. § 11-821(C) and Ordinance § 4.14(A)(2). The record reflects that the County was given an adequate opportunity to brief this legal issue and present its arguments at the hearing.

## III.      Standing

¶15      Appellees lack standing to call the bonds or to make a claim directly against the surety. *Norton v. First Fed. Sav.*, 128 Ariz. 176, 180, 624 P.2d 854, 858 (1981). Appellees acknowledge that only the County, as the obligee, may call the bonds. *Id.* However, Appellees are not suing the surety or seeking to collect damages against the bonds. Rather, Appellees are seeking, by means of combined declaratory and mandamus relief, to compel the County to call the bonds.

¶16      Pursuant to A.R.S. § 12-1832, a party "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have [a court] determine[] . . . any question of construction . . . arising under" the statute or ordinance, "and obtain a declaration of [his] rights, status or other legal relations thereunder." *Canyon Del Rio Investors, L.L.C. v. City of Flagstaff,* 227 Ariz. 336, 341, ¶ 18, 258 P.3d 154, 159 (App. 2011). "[A] justiciable controversy exists if there is an assertion of a right, status, or legal relation in which the plaintiff has a

definite interest and a denial of it by the opposing party." *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 199 Ariz. 43, 45, ¶ 10, 13 P.3d 785, 787 (App. 2000) (internal citation omitted).

¶17        Section 12-1832 grants Appellees standing to pursue their claim for declaratory relief. Appellees allege their interests are affected by the County's refusal to call the bonds based on A.R.S. § 11-821(C) and Ordinance § 4.14(A)(2). Accordingly, Appellees properly seek a declaration of their rights under the statute and Ordinance.

¶18        Appellees also seek mandamus relief. A writ of mandamus allows a "party beneficially interested" in an action to compel a public official or board "to perform an act imposed by law." A.R.S. § 12-2021; *Sears v. Hull*, 192 Ariz. 65, 68, ¶ 11, 961 P.2d 1013, 1016 (1998). The term "party beneficially interested" is "applied liberally to promote the ends of justice." *Barry v. Phx. Union High School*, 67 Ariz. 384, 387, 197 P.2d 533, 534 (1948); *see Armer v. Superior Court*, 112 Ariz. 478, 480, 543 P.2d 1107, 1109 (1975).

¶19        An action for mandamus "does not lie if the public officer is not specifically required by law to perform the act." *Board of Educ. v. Scottsdale Educ. Ass'n*, 109 Ariz. 342, 344, 509 P.2d 612, 614 (1973). A mandamus action may only be brought if the statutory duty imposed on the public official or board is purely "ministerial." *El Paso Natural Gas Co. v. State*, 123 Ariz. 219, 221, 599 P.2d 175, 177 (1979). A ministerial duty is one that specifically describes the manner of performance and "leaves nothing to the discretion" of the public official or board. *Id.* In contrast, "if an action of a public officer is discretionary that discretion may not be controlled by mandamus." *Collins v. Krucker*, 56 Ariz. 6, 13, 104 P.2d 176, 179 (1940).[3]

¶20        Appellees claim they are "beneficially interested" in the County's refusal to call the bonds, because the bond monies are necessary

---

[3]        Appellees do not assert, as alternative grounds for mandamus, that the County acted arbitrarily in refusing to call the bonds. *Rhodes v. Clark*, 92 Ariz. 31, 35, 373 P.2d 348, 350 (1962) (holding that a mandamus action may only be brought to compel a ministerial duty or, if the action was discretionary, the public official or board acted arbitrarily and abused his discretion); *Collins*, 56 Ariz. at 13, 104 P.2d at 179 ("[I]f it clearly appears that the officer has acted arbitrarily and unjustly and in the abuse of discretion, the [mandamus] action may still be brought.").

to finish the Unit 3 improvements. However, we need not decide the issue of Appellees' standing to bring a mandamus action, because even if we assume Appellees have standing, mandamus relief is not appropriate in this case.

## IV.    Construction of A.R.S. § 11-821(C)

¶21        We begin our analysis with A.R.S. § 11-821(C). Section 11-821(C) provides, in relevant part, that subdivision regulations adopted by a county board of supervisors:

> . . . shall require the posting of performance bonds, assurances or such other security as may be appropriate and necessary to ensure the installation of required street, sewer, electric and water utilities, drainage, flood control and improvements meeting established minimum standards of design and construction.

¶22        Appellees argue that the County's interpretation of Ordinance § 4.14(A)(2) contravenes the plain language of A.R.S. § 11-821(C). When there is a conflict between a statute and an ordinance, the statute controls. *Thomas and King, Inc. v. City of Phx.*, 208 Ariz. 203, 207, ¶ 11, 92 P.3d 429, 433 (App. 2004); *see City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 109, ¶ 9, 32 P.3d 31, 34 (App. 2001) ("When an ordinance regulates an area that is also regulated by state statute, the ordinance may parallel the statute or even reach beyond the parameters of the statute so long as the ordinance does not conflict with the statute.").

¶23        Bellemont interprets the language in A.R.S. § 11-821(C) as stating that once a bond has been posted, the final plat approved, and the original developer defaults, the obligation to construct and pay for improvements is transferred from the original developer to the County.[4] According to Bellemont, to interpret the statute otherwise renders the

---

[4]       In support of this argument, Bellemont states that upon approval of the final plat, ownership of the streets and rights of way in Unit 3 was transferred to the County. We disagree. Although the County approved the streets in the final plat, this action did not transfer ownership of the streets to the County; ownership is not transferred to the County until it determines the streets are "fully completed" in accordance with the final plat. A.R.S. § 11-822(C); *West v. Sundance Dev. Co.*, 169 Ariz. 579, 583, 821 P.2d 240, 244. (App. 1991)

bond requirement meaningless and allows the County to abandon unfinished subdivisions. We disagree.

¶24 In construing a statute, we look to the plain language of the statute, giving effect to every word and phrase, and assigning to each word its plain and common meaning. *Bilke v. State,* 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003); *Cochise Cnty. v. Broken Arrow Baptist Church,* 161 Ariz. 406, 409, 778 P.2d 1302, 1305 (App. 1989). If a statute's language is clear and unambiguous, we apply it without resorting to other methods of statutory interpretation, unless doing so would lead to impossible or absurd results. *Harris*, 234 Ariz. at 345, ¶ 13, 322 P.3d at 162; *Bilke,* 206 Ariz. at 464, ¶ 11, 80 P.3d at 269; *State v. Flores,* 160 Ariz. 235, 239, 772 P.2d 589, 593 (App. 1989). If a statute's language is ambiguous, we attempt to determine the legislative intent by interpreting the statute as a whole, considering its place in the relevant statutory scheme, as well as the statute's "subject matter, historical background, effects and consequences, and spirit and purpose." *Harris*, 234 Ariz. at 345, ¶ 13, 322 P.3d at 162 (internal citations omitted); *see CSA 13-101 Loop, LLC, v. Loop 101, LLC,* 233 Ariz. 355, 360-61, ¶¶ 14-17, 312 P.3d 1121, 1126-27 (App. 2013).

¶25 In determining whether the County has discretion to call the bonds under A.R.S. § 11-821(C), we are also guided by the principle that counties, like cities, have no inherent powers; a county's authority is limited to those powers expressly or impliedly delegated to it by the state constitution or statutes. *Associated Dairy Prods. Co. v. Page,* 68 Ariz. 393, 395, 206 P.2d 1041, 1043 (1949); *Home Builders Assoc. of Cent. Ariz. v. City of Maricopa*, 215 Ariz. 146, 149, ¶ 5, 158 P.3d 869, 873 (App. 2007). Thus, in performing its duties under A.R.S. § 11-821(C), the County possesses "all powers that may be fairly implied from, and are necessary for, the complete exercise of [its] express powers" under the statute. *City of Phx. v. Phx. Civil Serv. Bd.*, 169 Ariz. 256, 259, 818 P.2d 241, 244 (App. 1991).

¶26 The primary purpose of the bond posting requirement in A.R.S. § 11-821(C) is to protect the public from bearing the costs of necessary subdivision improvements by requiring the developer to install and pay for such improvements. *Norton*, 128 Ariz. at 179, 624 P.2d at 857 ("Performance bonds which insure the proper completion of street, sewer and water utilities by subdivision developers protect the city from the necessity of spending its citizens' money to fulfill the developers' responsibilities."); *see West*, 169 Ariz. at 583-84, 821 P.2d at 244-45 (noting that purpose of a developer posting a bond under A.R.S. § 11-806.01(G), the predecessor statute to A.R.S. § 11-821(C), was to ensure that the

developer performed its obligation to construct necessary subdivision improvements).

¶27 Bellemont concedes that developers have the obligation to install required subdivision improvements. Bellemont asserts, however, that there is currently no developer or subdivider to complete the improvements for Unit 3. Bellemont claims that it is not a developer or subdivider; rather, it is "just a county property owner." Bellemont further contends that Arizona law and the Ordinance place no requirement on it, as a property owner, to complete the improvements simply because it owns multiple lots in the subdivision.

¶28 We conclude Bellemont is a developer and subdivider for the purposes of A.R.S. § 11-821(C) because it purchased Unit 3 with the intent to construct residences on the lots and sell them to the public. The Ordinance and relevant state statutes all define a subdivider as including subsequent developers who seek to construct residences on subdivision lots and sell them. Both section 2.1 of the Ordinance and A.R.S. § 32-2101(55) define a "subdivider" as anyone "who offers for sale or lease six or more lots . . . or who causes land to be subdivided . . . or who undertakes to develop a subdivision." *See Alaface v. Nat'l Inv. Co.*, 181 Ariz. 586, 592-93 & n.2, 892 P.2d. 1375, 1381-82 & n.2 (App. 1995) (noting that definition of "subdivider" under A.R.S. § 32-2101, includes subsequent developers who were not the original subdividers).

¶29 With this statutory purpose in mind, we examine the language of A.R.S. § 11-821(C). The statute provides that the County regulations "shall" require the posting of a bond, assurance or other security. A.R.S. § 11-821(C). Next, the statute mandates that the bond, assurance or security posted by the developer must be "appropriate and necessary" to "ensure" the installation of the "required" infrastructure.

¶30 When read together, all of these terms plainly require the County to "ensure" that the amount of the bond posted by a developer is sufficient to cover the cost of necessary subdivision improvements. The statute does not, however, specify when a county is required to call a bond. Where a statute is silent on an issue, "we will not read into [it] something which is not within the express manifest intention of the Legislature as gathered from the statute itself," nor will we "inflate, expand, stretch or extend the statute to matters not falling within its expressed provisions." *See Martin v. Althoff,* 27 Ariz. App. 588, 591, 557 P.2d 187, 190 (1976) (citation omitted).

10

¶31        We conclude the County's decision not to call the bonds at this time was a proper exercise of its necessary and implied power under A.R.S. § 11-821(C).  The legislative purpose of the statute is to require developers such as Bellemont to pay for the cost of subdivision improvements.  Here, the County determined that calling the bonds did not serve this interest; rather, the County decided, in its discretion, to forego calling the bonds and require Bellemont to pay for the cost of the Unit 3 improvements.

¶32        In support of this conclusion, we note that Bellemont's construction of A.R.S. § 11-821(C) would lead to absurd results.  Under Bellemont's interpretation of the statute, whenever a developer abandons a subdivision, a county has a mandatory duty to call the bond, regardless of the circumstances.  This leaves counties with an open-ended obligation to finish all abandoned subdivision improvements, with no discretion to consider *any* factors that may arise after the final plat is approved.  For example, counties would be required to call a bond and finish improvements for a subdivision that may lay vacant for many years.  Indeed, if the County was obligated to call the bonds and finish the Unit 3 improvements as Bellemont contends, then it was required to do so immediately upon Empire's default in 2008 – despite the fact that six years later, the Unit 3 subdivision still remains vacant.  This court is charged with construing statutes to avoid such absurd results.  *Harris*, 234 Ariz. at 345, ¶ 13, 322 P.3d at 162; *Bilke,* 206 Ariz. at 464, ¶ 11, 80 P.3d at 269.

¶33        We therefore conclude the County properly exercised its discretion under the statute by seeking to have Bellemont install the required subdivision improvements rather than calling the bonds.

## V.    Construction of Ordinance Section 4.14(A)(2)

¶34        Ordinance § 4.14(A)(2) states the following regarding subdivision performance bonds:

> The Final Plat will be submitted to the Board for approval if the construction and improvements have been accepted or if a cash deposit or other financial arrangement acceptable to the County have been made between the subdivider and the Board.  In the event the subdivider fails to perform within the time allotted by the Board, then after reasonable notice to the subdivider of the default, *the County may do or have done all work and charge subdivider's deposit with all costs and expenses incurred*. (Emphasis added.)

¶35     The County argues that the use of the word "may," rather than "shall," is permissive and implies discretion. Ordinance § 2.1. Bellemont argues that the use of the word "may" limits the County's discretion to either call the bonds and finish the project itself, or use the bond monies to hire others to complete the project; the language does not, however, provide the County with the discretion to refuse to call the bonds.

¶36     We conclude Ordinance § 4.14(A)(2) allows the County to exercise its discretion in calling the bonds. The use of the word "may" in the Ordinance is a permissive term, and implies discretion. Section 2.1 of the Ordinance states that for the purposes of the Ordinance, the "word 'shall' is mandatory; the word 'may' is permissive." *See Walter v. Wilkinson*, 198 Ariz. 431, 432, ¶ 7, 10 P.3d 1218, 1219 (App. 2000) (holding that use of the word "may" in a statute generally indicates permissive intent, while "shall" generally indicates a mandatory provision).

¶37     Further, this construction is consistent with A.R.S. § 11-821(C), which provides the County with discretion in deciding when, and under what circumstances, to call a bond. *Supra*, at ¶¶ 31-32. Finally, a construction that provides the County with discretion to call bonds promotes the purpose and intent of Coconino County in enacting the Ordinance, which is "[t]o ensure that the costs of providing" subdivision improvements "are borne fairly and equitably by the subdivider rather than by property owners of the County at large." Ordinance § 1.1. *Supra*, at ¶ 26.

## VI.    Attorneys' Fees

¶38     Because we reverse, Appellees' request for attorneys' fees on appeal is denied. Appellees are not a prevailing party, and therefore are not entitled to an award of fees pursuant to either A.R.S. § 12-2030(A) or the private attorney general doctrine. *See Arnold v. Ariz. Dept. of Health Servs.*, 160 Ariz. 593, 609-10, 775 P.2d 521, 537-38 (1989).

## CONCLUSION

**¶39**        For the reasons discussed above, we conclude the County properly exercised its discretion under A.R.S. § 11-821(C) and Ordinance § 4.14(A)(2) in refusing to call the Unit 3 bonds.  As a consequence, the trial court erred in issuing its mandamus order compelling the County to call the bonds.  We therefore reverse the trial court's judgment, and remand this case to the trial court to enter a judgment in favor of the County on Appellees' claims for declaratory and mandamus relief.



Ruth A. Willingham · Clerk of the Court
FILED: gsh