NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PETER STROJNIK, *Plaintiff/Appellant,*

*v.*

STATE OF ARIZONA, ex rel. MARK BRNOVICH, and JANE DOE
BRNOVICH, *Defendants/Appellees.*

No. 1 CA-CV 20-0423
FILED 7-20-2021

Appeal from the Superior Court in Maricopa County
No.  CV2019-054266
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**

COUNSEL

Peter Strojnik, Phoenix
*Plaintiff/Appellant*

Gallagher & Kennedy, P.A., Phoenix
By Mark C. Dangerfield, Kevin E. O'Malley
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Brian Y. Furuya delivered the decision of the Court, in which Chief Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**F U R U Y A**, Judge:

¶1        Plaintiff Peter Strojnik appeals the superior court's order granting an amended Arizona Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss regarding his verified complaint, based on (1) his failure to timely serve a notice of claim as to claims brought against Arizona Attorney General Mark Brnovich ("AG Brnovich") and (2) his lack of standing to pursue a mandamus action against AG Brnovich. Strojnik further appeals the court's imposition of sanctions against him. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Strojnik is an attorney who, until he was disbarred in May 2019, was a member of the State Bar of Arizona ("SBA"). In the time preceding his disbarment, Strojnik filed, as counsel, more than 1,700 cases in Arizona state court and more than 160 cases in Arizona district court, which he asserted was on behalf of the "disabled community in Arizona." *Strojnik v. SBA*, 446 F. Supp. 3d 566, 571 (D. Ariz. 2020). These cases alleged various violations of the Americans with Disabilities Act ("ADA") and Arizona's version of the ADA ("AzDA")—Ariz. Rev. Stat. ("A.R.S.") § 41-1492 *et. seq. Id.* The lawsuits alleged "minor, even trivial" violations of the ADA and AzDA. *See, e.g., Advocs. for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 892–93 (D. Ariz. 2017). And after filing what were essentially cookie-cutter complaints, Strojnik would generally refuse to dismiss a case—even if the defendants immediately corrected the alleged problems—unless the defendants paid him thousands of dollars in attorneys' fees, which appeared unsupported by the amount of work necessary to prepare or pursue these complaints. *See e.g., id.* (noting Strojnik sought "no less than $5,000" under such circumstances). A federal judge addressing Strojnik's practices referred to them as an "unethical extortion of unreasonable attorney's fees from defendants." *Id.* at 898.

¶3        In 2016 and 2017, AG Brnovich (on behalf of the State of Arizona) successfully moved to intervene in, consolidate, and dismiss a

large number of the state-court cases. In December 2017, Strojnik submitted an opinion editorial article to the Arizona Republic criticizing AG Brnovich for this intervention.[1] In March 2018, the SBA filed a motion with Arizona's presiding disciplinary judge requesting Strojnik's interim suspension from the practice of law, and in November 2018, the SBA filed a formal complaint against Strojnik, which resulted in his consent to disbarment.

¶4        On June 10, 2019, Strojnik served AG Brnovich with a notice of claim, followed by the filing of the verified complaint in this case on September 3, 2019. Strojnik alleged that AG Brnovich and the SBA—which was not joined as a party—conspired to halt ADA-related litigation in Arizona by stripping Strojnik of his right to practice law. He sought damages against AG Brnovich for (1) conspiring with others, including the SBA, (2) aiding and abetting the SBA and others who were pursuing his disbarment, (3) tortiously interfering with Strojnik's contractual relationships with his clients, (4) abuse of the judicial process, and (5) intentional infliction of emotional distress. Strojnik additionally sought mandamus relief against AG Brnovich, to compel him to conduct periodic AzDA compliance reviews of covered entities.

¶5        AG Brnovich successfully moved to dismiss for failure to state a claim under Rule 12(b)(6). The superior court dismissed Strojnik's damages claims with prejudice, citing his failure to timely comply with the notice of claim statute. *See* A.R.S. § 12-821.01(A). The court further dismissed Strojnik's mandamus claim for lack of standing. The court also denied Strojnik's motion for leave to amend his damages claims based on futility and his mandamus claim based on his failure to allege a factual basis for standing. Finally, the court required Strojnik to pay AG Brnovich's reasonable attorneys' fees as a sanction pursuant to A.R.S. § 12-349.

¶6        Strojnik timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## STANDARD OF REVIEW

¶7        We review *de novo* the dismissal of claims under Rule 12(b)(6). *Brittner v. Lanzilotta*, 246 Ariz. 294, 295, ¶ 4 (App. 2019) (citing *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012)). We further review *de novo* issues of law and statutory interpretation. *McNamara v. Citizens Protecting Tax Payers*, 236 Ariz. 192, 194, ¶ 5 (App. 2014).

---

[1]        Strojnik not only discussed his submission of the op-ed in the verified complaint but also included a weblink to that article therein.

**¶8**       In adjudicating a Rule 12(b)(6) motion, Arizona courts generally "look only to the pleading itself," assuming the truth of the well-pled factual allegations and indulging all reasonable inferences therefrom. *Brittner*, 246 Ariz. at 295–96, ¶ 4 (quoting *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008)). However, courts do not "accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Stauffer v. Premier Serv. Mortg., LLC*, 240 Ariz. 575, 578, ¶ 9 (App. 2016). We will affirm the superior court's dismissal if, as a matter of law, Strojnik was "not entitled to relief under any interpretation of the facts susceptible of proof." *Brittner*, 246 Ariz. at 296, ¶ 4.

## DISCUSSION

**¶9**       Strojnik argues the superior court erred by failing to convert the amended motion to dismiss to a motion for summary judgment because of AG Brnovich's presentation of matters outside of his verified complaint. He also argues the court erred because it "refused to accept as true" the assertion in Strojnik's complaint that he first discovered AG Brnovich's involvement in the loss of his permission to practice law on or about March 13, 2019—when disclosure of certain emails allegedly prompted him to realize AG Brnovich and the SBA were conspiring to halt his ADA and AzDA litigations. Thus, he argues his notice of claim was timely. Further, Strojnik argues the court erred by dismissing his claim for mandamus relief. Finally, Strojnik argues the court erred by imposing sanctions against him. We address each argument in turn.

## I.       The Attachments to the Rule 12(b)(6) Motion to Dismiss did not Convert the Motion into a Rule 56 Motion for Summary Judgment

**¶10**       Strojnik argues the superior court improperly considered material outside his September 2019 verified complaint without converting AG Brnovich's amended Rule 12(b)(6) motion to a motion for summary judgment. AG Brnovich's amended motion to dismiss included 16 exhibits, all of which were filings or orders in either (1) Strojnik's attorney discipline proceedings, which he referenced in his complaint, or (2) filings in cases where he appeared as counsel of record. In his response to the amended motion to dismiss, Strojnik claimed that "the truth of any statements" in "Exhibits 3, 4, 5, 6 cannot be considered to alter, diminish or dispute any of the factual allegations in" his complaint. Accordingly, Strojnik waived any objection he may have had to the other 12 exhibits attached to the amended motion to dismiss.

¶11        Exhibit 3 was an order of interim suspension in his attorney discipline proceedings, which were referenced in the complaint. And Exhibits 4, 5 and 6 were a judgment, minute entry, and motion for sanctions from a superior court case that also was referenced in the complaint. Accordingly, the filing of these exhibits did not convert the motion to dismiss into a motion for summary judgment. *See Coleman*, 230 Ariz. at 356, ¶ 9 ("public records regarding matters referenced in a complaint" are not considered matters outside the pleading).

¶12        Therefore, the superior court did not err by considering the attachments to AG Brnovich's amended 12(b)(6) motion.

## II.        Accrual & Notice of Claim Statute, A.R.S. § 12-821.01

¶13        Strojnik argues the superior court erred by finding his damages claims accrued at a time such that service of his notice of claim upon AG Brnovich was untimely pursuant to A.R.S. § 12-821.01. On this record, the court did not err.

¶14        Under A.R.S. § 12-821.01(A), a notice of claim must be filed within 180 days after the cause of action "accrues." A cause of action accrues when the damaged party (1) "realizes he or she has been damaged" and (2) "knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B).

¶15        Here, Strojnik served his notice of claim on AG Brnovich on June 10, 2019. Therefore, if his causes of action accrued before December 12, 2018, his claims were statutorily time-barred. *See* A.R.S. § 12-821.01(A); *Thompson v. Pima Cnty.*, 226 Ariz. 42, 45, ¶ 10 (App. 2010). The record here shows that Strojnik's notice of claim was untimely.

¶16        For a cause of action to accrue, a plaintiff must possess "a minimum requisite knowledge sufficient to identify that a wrong occurred and caused injury," but "need not know all the facts underlying a cause of action to trigger accrual." *Cruz v. City of Tucson*, 243 Ariz. 69, 72, ¶ 8 (App. 2017) (citing *Doe v. Roe*, 191 Ariz. 313, 323, ¶ 32 (1998)). "'[T]he core question' of when a claim accrued is not when the plaintiff was conclusively aware she had a cause of action against a particular party, but instead when 'a reasonable person would have been on notice to investigate.'" *Id.* (quoting *Walk v. Ring*, 202 Ariz. 310, 316, ¶¶ 23–24 (2002)) (explaining plaintiff need only understand that a wrong occurred and have a reason to connect that wrong to a "particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result

from fault"). Accrual can be decided as a matter of law when "there is no genuine dispute as to facts showing the plaintiff knew or should have known the basis for the claim." *Humphrey v. State*, 249 Ariz. 57, 64, ¶¶ 24–25 (App. 2020).

¶**17**    Strojnik claims AG Brnovich conspired with others, including the SBA, to have him disbarred, thereby preventing him from continuing to represent plaintiffs in ADA and AzDA litigation. But this record affirmatively shows accrual occurred, at the latest, in November 2018.

¶**18**    In 2016 and 2017, AG Brnovich successfully moved to intervene in, consolidate, and dismiss many ADA and AzDA lawsuits filed by Strojnik in superior court. In December 2017, Strojnik submitted his op-ed published in the Arizona Republic criticizing AG Brnovich for intervening. The op-ed expressed Strojnik's beliefs regarding AG Brnovich's putative motivations behind the intervention and implied AG Brnovich had aligned with a group impeding ADA-related litigation in Arizona by, among other things, "fil[ing] bar charges" against civil rights lawyers, such as Strojnik himself. The publication evidences Strojnik's personal belief AG Brnovich was affiliated with those pursuing bar charges against him and others, as well as the anticipated effect these efforts would have on the pursuit of further litigation. At the request of the SBA, Strojnik was suspended from law practice in July 2018 after a proceeding where one of AG Brnovich's assistants testified against Strojnik as a key witness. In November 2018, the SBA pursued Strojnik's disbarment. These undisputed facts taken together show Strojnik knew or should have known of AG Brnovich's role in what Strojnik alleges was tortious behavior to see him disbarred no later than November 2018. Thus, his June 10, 2019 notice of claim—filed more than 180 days after these claims for damages accrued—was untimely, and it was not error to dismiss Strojnik's damages claims as time-barred.[2]

¶**19**    Because the claims were time barred, any putative amendment would have been futile. Accordingly, the superior court did not err by denying Strojnik's motion for leave to amend his complaint. *See Bishop v. State Dep't of Corr.*, 172 Ariz. 472, 474–75 (App. 1992) (explaining there is no abuse of discretion in denying a proposed amendment if allowing such would be futile).

---

[2]    Because we affirm the dismissal of these claims based on Strojnik's failure to serve a timely notice of claim, we need not address the merits of the other grounds relied upon by the court to dismiss his damages claims.

### III. Claims Against AG Brnovich Personally

**¶20** The superior court did not expressly address Strojnik's claim that AG Brnovich is personally liable for Strojnik's damages. Nevertheless, when a trial court does not explicitly resolve a matter that was pending before it within a final judgment, we deem it denied. *See State v. Mendoza-Tapia*, 229 Ariz. 224, 231, ¶ 22 (App. 2012) (observing that "[w]hen a court fails to expressly rule on a motion, we deem it denied." (citing *State v. Hill*, 174 Ariz. 313, 323 (1993)). Further, we may affirm the court's grant of the amended motion to dismiss for any reason supported by the record. *See Dube v. Likins*, 216 Ariz. 406, 417, ¶ 36 n.3 (App. 2007).

**¶21** Here, Strojnik's argument that AG Brnovich is personally subject to liability is without merit. "A public official is entitled to immunity from suit for actions taken by him within the scope of his duties as a public official." *White Mountain Apache Indian Tribe v. Shelley*, 107 Ariz. 4, 7 (1971) (citing *Barr v. Matteo*, 360 U.S. 564 (1959)); *see also Chamberlain v. Mathis*, 151 Ariz. 551, 554–560 (1986) (discussing qualified immunity for government officials from liability for acts within the scope of their public duties).

**¶22** That AG Brnovich was acting within the scope of his public duties is clear from the record. *See* A.R.S. § 41-193(A)(2) (granting the attorney general power to represent the State in any state-court proceeding, where the State or an officer thereof is a party or has an interest in such proceeding). Further, Strojnik's statements that AG Brnovich was motivated by personal ambitions are irrelevant to the question of qualified immunity in this case and are also conclusions unsupported by the record. *See Stauffer*, 240 Ariz. at 578, ¶ 9.

### IV. Mandamus Claim

**¶23** Strojnik further argues the superior court erred by dismissing his request for mandamus relief. When a request for mandamus relief is initiated by complaint in superior court, "the judge must first exercise [] discretion and decide whether to consider the case on its merits." *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92 (App. 1979). If the court did not assume jurisdiction over the merits of the claim, "there exists no trial court determination for the appellate court to review, and the sole issue on appeal is whether the trial court abused its discretion when it declined to accept jurisdiction." *Id.*

**¶24** Here, the superior court dismissed Strojnik's mandamus claim for lack of standing without reaching the merits, relying on a "concrete-harm" standard. Strojnik argues that when a party seeks

mandamus relief, the correct standard for determining standing is whether that party is beneficially interested in the outcome, and not whether such party has asserted a particularized concrete harm. *See* A.R.S. § 12-2021. However, even assuming Strojnik to be correct, we may still affirm on the record before us.

**¶25** A mandamus action may only be brought to compel a public officer to perform a statutory duty that is "purely ministerial." *Ponderosa Fire Dist. v. Coconino Cnty.*, 235 Ariz. 597, 601, ¶ 19 (2014) (internal quotation omitted). A ministerial duty is one that "specifically describes the manner of performance" and "leaves nothing to the discretion" of the public officer. *Id.* at 601–02, ¶ 19 (citing *El Paso Nat. Gas Co. v. State*, 123 Ariz. 219, 221 (1979)). Thus, "if an action of a public officer is discretionary[,] that discretion may not be controlled by mandamus." *Id.* at 602, ¶ 19 (citing *Collins v. Krucker,* 56 Ariz. 6, 13 (1940)).

**¶26** Strojnik seeks mandamus relief to compel AG Brnovich to conduct periodic compliance reviews as required by A.R.S. § 41-1492.09, which he alleges AG Brnovich has never done. This statute provides that "the attorney general shall undertake periodic reviews of compliance of covered entities under this article." A.R.S. § 41-1492.09(A). Conspicuously absent from the statute, however, is any language specifying when or in what manner such review must be performed to achieve compliance. *Id.* Nevertheless, Strojnik argues that because A.R.S. § 41-1492.09 includes a requirement for "periodic" compliance reviews, a review must be performed "at least once," and mandamus relief is available, notwithstanding any lack of other specific direction. But this argument is undermined by the language of the statute itself.

**¶27** The word "periodic" is given no special definition under the AzDA. *See* A.R.S. § 41-1492 ("Definitions"); A.R.S. § 41-1492.09. In construing the language of statutes, we look to the "ordinary and commonly accepted meaning" of words. *See JH2K I LLC v. Ariz. Dep't of Health Servs.*, 246 Ariz. 307, 310, ¶ 9 (App. 2019). Under ordinary and commonly accepted meaning, "periodic" is defined as "recurring at regular intervals." *Univ. Physicians, Inc. v. Pima Cnty.*, 206 Ariz. 63, 67, ¶ 21 (App. 2003) (citing 11 Oxford English Dictionary 560 (2d ed. 1989)). Although Strojnik is correct that the ordinary meaning of "periodic" excludes "never," the term does not admit of any particular timeframe or deadline by which AG Brnovich must adhere in performing the compliance reviews required by A.R.S. § 41-1492.09. As such, the statute commends to AG Brnovich discretion as to when he will perform his duty thereunder, both in terms of beginning compliance reviews and in what interval they should

recur. The statute also does not specify *how* AG Brnovich is to conduct the required periodic compliance reviews. A.R.S. § 41-1492.09(A). The lack of specification as to the manner by which AG Brnovich must complete the duty imposed by the statute is further proof that it is not purely ministerial.

¶28 Because the attorney general's duty to conduct periodic compliance reviews is not purely ministerial, Strojnik's claim for mandamus relief seeking to compel AG Brnovich's performance is inappropriate, and the superior court did not err by dismissing it. *See Ponderosa Fire Dist.*, 235 Ariz. at 601–04, ¶¶ 19, 20, 30–33 (finding mandamus relief "inappropriate" where a statute did not specify "when" a county is required to call a bond; thus, where the statute was "silent on an issue," the appellate court would not read into it something that was not within "the express manifest intention of the Legislature" nor "inflate, expand, stretch or extend the statute to matters not falling within its express provisions") (citing *Martin v. Althoff*, 27 Ariz. App. 588, 591 (1976)).

¶29 Consequently, the superior court also did not err in denying Strojnik's motion for leave to amend his mandamus action because doing so would have been futile. *See Bishop*, 172 Ariz. at 474–75.

## V.   Sanctions

¶30 Strojnik argues the superior court committed reversible error by requiring him to pay AG Brnovich's reasonable attorneys' fees as a sanction. *See* A.R.S. § 12-349 (mandating an award of reasonable attorneys' fees in a civil action where, in relevant part, a party (1) brings or defends a claim without substantial justification or (2) brings or defends a claim solely or primarily for delay or harassment). "We review an award under § 12-349 to determine if there is sufficient evidence to support the finding of a frivolous claim or defense." *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 301, ¶ 49 (App. 2011).

¶31 Strojnik argues that bringing his lawsuit was not sanctionable because of the right to petition under Section 5, Article 2, of the Arizona Constitution. But the right to petition the government does not extend to frivolous or harassing lawsuits brought in bad faith, which is what the superior court found Strojnik's claims to be. *See Hunter Contracting Co., Inc. v. Super. Ct. In and For Cnty. of Maricopa*, 190 Ariz. 318, 324 (App. 1997) ("[T]he Arizona constitution does not assure the right to bring a frivolous lawsuit."). Further, Strojnik does not argue that § 12-349 is inapplicable. He does not cite to the record to contravene the court's findings, does not cite any other authority to support his position, and our own review of the

record substantiates the court's findings. Therefore, his argument has been waived, and in any event, is unsupported by the record. *See* ARCAP 13(a)(7); *see also State Farm Mut. Auto. Ins. Co. v. Novak*, 167 Ariz. 363, 370 (App. 1990).

**¶32** Strojnik further argues the superior court erred by not bifurcating the fees "between the State and Mr. and Mrs. Brnovich personally," but offers no authority to support his argument that the court was obliged to do so. Therefore, this argument is also waived. *See id.*

**¶33** Contingent upon compliance with ARCAP 21, we grant the Appellees' request for reasonable attorneys' fees incurred on appeal pursuant to A.R.S. § 12-349 and ARCAP 25 because the claims within Strojnik's appeal lacked substantial justification. *See* A.R.S. § 12-349 (applying further to civil actions "appealed in a court of record in this state"). As the successful party on appeal, we further award Appellees' their costs upon compliance with ARCAP 21.

## CONCLUSION

**¶34** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA