IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOE E. PRICE,
*Plaintiff/Appellant*,

*v.*

CITY OF MESA, a municipal corporation,
*Defendant/Appellee*.

No. 1CA-CV 14-0274 A
FILED 12-02-2014

Appeal from the Superior Court in Maricopa County
CV2013-094063
The Honorable David K. Udall, Judge

**AFFIRMED**

COUNSEL

Joe E. Price, Mesa
*Plaintiff/Appellant*

Gust Rosenfeld, PLC, Phoenix
By David A. Pennartz, Landon W. Loveland, Charles W. Wirken,
 Sarah C. Smith
*Counsel for Defendant/Appellee*

---

## OPINION

Presiding Judge Patricia A. Orozco delivered the opinion of the Court, in which Judge Randall M. Howe and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1        Joe E. Price appeals the grant of summary judgment in favor of the City of Mesa (Mesa).  For the reasons that follow, we affirm.

¶2        In this opinion, we construe and apply Arizona Revised Statutes (A.R.S.) sections 28-7691 through -7697 (West 2014)[1] and Article 7, Section 13 of the Arizona Constitution and hold that Mesa was not required to obtain voter approval before issuing notes, to finance a light rail extension project.

### FACTS AND PROCEDURAL HISTORY[2]

¶3        In January 2014, the Mesa Mayor and City Council passed Resolution Number 10380.  The resolution authorized the issuance of Transportation Project Advancement Notes (TPANS) to advance project costs for a 1.9 mile light rail transit extension on Main Street from Mesa Drive to Gilbert Road and a "Park-and-Ride" lot for light rail patrons.  The resolution required Mesa to secure payment on the TPANS' interest and principal by a pledge of "Transportation Project Advance Revenues" (TPARS) and "excise taxes" as defined in A.R.S. sections 28-7691 through -7697.  The resolution further noted that TPANS did not constitute "an obligation . . . to levy or pledge any form of ad valorem property taxation nor will [they] constitute an indebtedness of the City . . . within the meaning

---

[1]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

[2]        Price's opening brief fails to cite to the record as required by Rule 13(a)(4) of the Arizona Rules of Civil Appellate Procedure.  Thus, we disregard the brief's statement of facts and rely on Mesa's statement of facts and our own review of the record.  *See Sholes v. Fernando*, 228 Ariz. 455, 457 n. 2, ¶ 2, 268 P.3d 1112, 1114 n. 2 (App. 2011).  Moreover, we disregard those portions of Price's reply brief not "strictly confined to rebuttal of points made" in Mesa's answering brief.  *See* ARCAP 13(c).

of the Constitution of the State of Arizona . . . but shall instead be limited obligations payable solely out of the pledged sources of funds . . . ." The project was also to be partially funded with repurposed federal transportation grant funds, which would be used to pay off the TPANS early "if and when received."

¶4          Price, a Mesa resident, brought suit claiming that Mesa's funding sources were "uncertain and will likely be insufficient to fund the Light Rail extension[.]" Moreover, Price argued that Mesa would have to issue general revenue bonds to fund the project and that the extension "cannot occur without putting the taxpayer approved bonding programs, already submitted and approved by the voters, in jeopardy." Price further argued that Mesa's proposed sale of notes required an election under Article 7, Section 13 of the Arizona Constitution.

¶5          Mesa maintained that it only intended to pledge excise tax revenues to repay the TPANS and that doing so would not render Mesa or its taxpayers directly liable for their repayment. Mesa also argued that because it did not assume "a general liability to repay the borrowing," the TPANS financing scheme was not subject to the indebtedness limit or the constitutional election requirement of Article 9, Section 8 and Article 7, Section 13 of the Arizona Constitution, respectively.

¶6          Both parties moved for summary judgment and agreed that there were no genuine disputes of material fact. The trial court granted Mesa's motion, finding that the TPANS are not general debts or general obligations bonds and thus, Mesa was not required to obtain voter approval before issuing them. Price timely appealed and we have jurisdiction under Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21.A.1. and -2101.A.1 (West 2014).

## DISCUSSION

¶7          Price argues that the trial court's order granting Mesa's motion for summary judgment was "directly contrary to the statutes and federal regulations applicable to this case."[3] We review the grant of

---

[3]          Arguments not presented to the trial court are generally waived on appeal. Price argues that Mesa failed to comply with federal securities regulations, but did not present this issue to the trial court. We deem it waived on appeal. *See Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, 109, ¶ 17, 158 P.3d 232, 238 (App. 2007) (holding that parties must first raise arguments to the trial court so that it may rule on the issue).

summary judgment and questions of law, including the interpretation of statutes, de novo. *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 498-500, ¶¶ 14-24, 88 P.3d 565, 568-70 (App. 2004). In reviewing issues of statutory construction, we look to the statute's plain language to determine its meaning. *Koss Corp. v. American Express Co.*, 233 Ariz. 74, 79, ¶ 12, 309 P.3d 898, 903 (App. 2013).

I.      Light Rail Extension

¶8      Government entities may enter into transportation project advance agreements and issue and sell TPANS. A.R.S. § 28-7692. However, state statutes authorizing TPANS do not expressly require government entities to obtain voter approval before doing so. *See* A.R.S. §§ 28-7691 to - 7697. When a statute is silent on an issue, "'we will not read into [it] something which is not within the express manifest intention of the Legislature as gathered from the statute itself,' nor will we 'inflate, expand, stretch or extend the statute to matters not falling within its expressed provisions.'" *Ponderosa Fire Dist. v. Coconino Cnty.*, 235 Ariz. 597, 603, ¶ 30, 334 P.3d 1256, 1262 (App. 2014) (internal citations omitted).

¶9      Because the legislature was silent on this issue, we presume it did not intend to require municipalities to hold elections before issuing TPANS. This conclusion is further supported by other statutes that explicitly require municipalities to obtain voter approval before employing other financing options. *See, e.g.*, A.R.S. §§ 48-682 and 9-523.

¶10     However, Price argues that Mesa has "attempt[ed] to mischaracterize [its] financial obligation . . . [and] avoid the voter requirement of an election for the approval of this bond debt to finance a public utility undertaking[.]" The trial court correctly identified the issue as follows:

> The central question in this case is what [Mesa] has pledged as security to repay its obligation. If it is a general obligation of [Mesa] and its property owners, [Mesa] would have needed to have an election prior to its approval of its funding mechanism for the second extension of the [Light Rail Transit System]. However, if it is a limited pledge of excise tax for a limited purpose, it would not qualify as a general debt [of Mesa], and, therefore, no special election would be necessary.

¶11     The Arizona Constitution governs election requirements for general obligation bonds. "Questions upon bond issues or special assessments shall be submitted to the vote of real property tax payers, who

shall also in all respects be qualified electors of this state, and of the political subdivisions thereof affected by such question." Ariz. Const. art. 7, § 13.

¶12          "The purpose in requiring an election on general obligation bond issuances is to provide the electors of an affected district with a voice in accepting or rejecting a proposed expenditure which they ultimately may bear." *Tucson Transit Auth., Inc. v. Nelson*, 107 Ariz. 246, 248, 485 P.2d 816, 818 (1971). However, bond issues and special assessments that are not directly charged against Mesa and do not increase its indebtedness are not under the purview of Article 7, Section 13 and thus do not require an election. *See id.* at 249, 485 P.2d at 819.

¶13          The legislature has already established that TPANS are not general obligations. A.R.S. § 28-7697.A. Instead, TPANS are "limited obligations of the issuer of the notes and are payable solely from [TPARS] received by the political subdivision and . . . other monies lawfully available for application to that purpose[.]" A.R.S. § 28-7697.B.

¶14          Mesa has a limited financial obligation in this case because it has only pledged to pay the TPANS interest and principal with TPARS and excise taxes, which are distinct from Mesa's general funds. TPARS constitute "any revenues a political subdivision receives under a transportation project advance agreement, or as proceeds of [TPANS], together with any earnings from the investment of revenues." A.R.S. § 28-7691.5. Excise taxes are:

> [A]ll unrestricted excise, transaction, franchise, privilege and business taxes, state shared sales and income taxes, fees for licenses and permits and state revenue sharing that are levied and paid by a political subdivision or contributed, levied or paid to the political subdivision and not earmarked by the contributor or the political subdivision for a contrary or inconsistent purpose.

A.R.S. § 28-7691.1.

¶15          Political subdivisions issuing revenue bonds assume no actual or potential liability. *Nelson*, 107 Ariz. at 251, 485 P.2d at 821. Revenue bonds made payable with revenue from the project itself, state and city contributions from fees, penalties and excise taxes already in existence, and revenues from a constitutionally authorized fund that is distinct from general state revenues do not require voter approval. *Id.* Moreover, "municipal revenue bonds or obligations payable out of a special fund separate from the city's general funds do not require an election before they

may be issued[.]" *City of Tucson v. Corbin*, 128 Ariz. 83, 87, 623 P.2d 1239, 1243 (App. 1980). Because Mesa did not pledge its general funds, it was not required to obtain voter approval before issuing the bonds.

II. Parking Lot

¶16 We next turn to whether Mesa was required to obtain voter approval before issuing TPANS to advance the construction costs of the Park and Ride parking lot. Price argues that the proposed parking lot is a utility undertaking requiring voter approval. Under A.R.S. § 9-523, "[q]uestions on bond issues under this article shall be submitted to the qualified electors of the municipality." Such bond issues include "utility undertakings," which include, in relevant part, "[a]irport buildings or other airport facilities or buildings or structures to provide off-street parking of motor vehicles[.]" A.R.S. § 9-521.5(b).

¶17 Assuming without deciding that the parking lot qualifies as a utility undertaking, Mesa was not required to obtain voter approval under A.R.S. § 9-523. Mesa issued TPANS and not municipal bonds under A.R.S. § 9-521 to finance construction. Also, for reasons discussed above, the TPANS Mesa proposed to finance the parking lot are not general obligations, and thus, voter approval is not required.

**CONCLUSION**

¶18 We affirm the trial court's granting of Mesa's motion for summary judgment.

