OROZCO, Judge:
*1003 ¶ 1 Premiere Vacation Collection Owners Association, Inc. (the Association) appeals the superior court's rulings in favor of Norman Zwicky. For the following reasons, we affirm the summary judgment in favor of Zwicky enforcing his statutory right to inspect Association records but vacate the order modifying the protective order and directing the Association to send a notice to its members. We remand for further proceedings relating to the protective order.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 2 The Association is an incorporated association of members holding an interest in the Premiere Vacation Collection timeshare plan. See Arizona Revised Statutes (A.R.S.) section 33-2202(13)[2] (defining timeshare plan). Zwicky is a member of the Association.
¶ 3 In 2004, Zwicky paid approximately $26,000 for his timeshare interest. See A.R.S. § 33-2202(11) (defining timeshare interest). After a subsidiary of Diamond Resorts Corporation acquired a substantial portion of the timeshare assets, Zwicky experienced a significant increase in his annual assessments. Zwicky alleges that the high assessments rendered his membership interest "essentially worthless."
¶ 4 Zwicky filed a lawsuit in superior court seeking "judicial enforcement of his right to inspect the books and records" of the Association pursuant to A.R.S. §§ 10-11602, 33-2209, and common law. See A.R.S. § 10-11602 (providing a statutory right of inspection for members of nonprofit corporations); A.R.S. § 33-2209 (providing a statutory right of inspection for members of timeshare associations). His stated purpose was to determine whether the Association's board "acted reasonably and in good faith in calculating and approving the assessments in question."
¶ 5 In response to discovery, the Association produced some documents. After reviewing the documents, Zwicky's counsel determined they were insufficient to "clearly ascertain and verify the basis for calculating Mr. Zwicky's annual assessments." Accordingly, Zwicky moved for summary judgment seeking inspection of additional documents. The Association cross-moved for summary judgment asserting that it had already provided the documents requested in the complaint and all documents to which Zwicky was entitled under A.R.S. § 33-2209.
¶ 6 Following oral argument on the cross-motions, the superior court granted summary judgment in favor of Zwicky. In a subsequent ruling, the court specified the documents Zwicky could inspect and issued a protective order stating they "shall be maintained in confidence" and disclosed only to Zwicky, his attorneys, accountants, and experts. Thereafter, the Association produced more than one thousand pages of documents, designating some as "confidential," claiming they contained "sensitive personal information, personnel records, trade secrets, proprietary business information, or other confidential research, development, financial, or commercial information."
¶ 7 After reviewing the documents produced, Zwicky moved to modify the protective order. He explained that the documents revealed a good faith basis for a federal class action lawsuit, and asked the superior court to permit him to "quot[e], refer[ ] to, or otherwise utiliz[e]" the documents in his proposed lawsuit. At the same time, Zwicky moved for an order requiring the Association to send a letter or notice to Association members informing them that the Association was under court order to produce records in conjunction with Zwicky's lawsuit.
¶ 8 After oral argument, the superior court granted Zwicky's motion and modified its prior order to authorize Zwicky and his attorneys to use the documents produced by the Association "in a complaint or other court filing in the proposed class action litigation." The court also ordered the Association to send a Notice of Court Order (Notice) to timeshare members, pursuant to *1004 A.R.S. § 33-2210, advising them of the document production and providing them with contact information for Zwicky's counsel.
¶ 9 Thereafter, the superior court entered final judgment, and the Association timely appealed.[3] We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).
DISCUSSION
I. Summary Judgment
¶ 10 The Association first argues the superior court erred in entering summary judgment on Zwicky's claim to inspect its documents. We review the court's grant of summary judgment de novo. See Price v. City of Mesa , 236 Ariz. 267, 269, ¶ 7, 339 P.3d 650, 652 (App. 2014). We also review questions of law de novo, including the court's interpretation of statutes. See id.
¶ 11 In 2005, the Arizona Legislature enacted the Timeshare Owner's Association and Management Act, A.R.S. §§ 33-2201 to -2211. See 2005 Ariz. Sess. Laws, ch. 132 (1st Reg. Sess.). The Act grants timeshare owners the right to "inspect and copy all financial and other records of the association" that are "directly related to the timeshare plan." A.R.S. § 33-2209(A). Pursuant to A.R.S. § 33-2209(B), an owner's written request for records must be made "in good faith and for a proper purpose." A.R.S. § 33-2209(B)(2).
A. Compliance with A.R.S. § 33-2209
¶ 12 The Association argues that Zwicky's request did not comply with the requirements of A.R.S. § 33-2209. Our review of the record, however, reflects that Zwicky followed the statutory procedure in making his request. Before filing his lawsuit, Zwicky sent a letter to the Association asking for specific records as required by A.R.S. § 33-2209. When the Association did not produce all the records requested, Zwicky filed a lawsuit seeking judicial enforcement of his statutory inspection rights.
¶ 13 Contrary to the Association's assertion, the records the superior court ordered the Association to produce fall within the scope of A.R.S. § 33-2209. Specifically, the court ordered production of reports filed with the Arizona Department of Real Estate, property management agreements, profit and loss statements, annual budgets, occupancy rates, room rental revenue, and expense information. These documents qualify as "financial and other records of the association" that are "directly related to the timeshare plan." A.R.S. § 33-2209(A).
¶ 14 In addition, our review of the record supports the superior court's finding that Zwicky made his request "in good faith and for a proper purpose." A.R.S. § 33-2209(B)(2). The requirement of "proper purpose" dates back to territorial times when the Supreme Court of the Territory of Arizona applied it to a stockholder's request for corporate documents. See Hallenborg v. Cobre Grande Copper Co. , 8 Ariz. 329, 336, 74 P. 1052, 1054 (1904) ("[T]he courts of this territory are not loath to lend their aid ... to enable a stockholder to obtain access to the records of his corporation in a proper case, and for a proper purpose."). Also, in Tucson Gas & Electric Co. v. Schantz , 5 Ariz. App. 511, 428 P.2d 686 (1967), the Arizona Supreme Court addressed a shareholder's request for corporate records and explained that a proper purpose is one that enables a shareholder to "derive any information that will enable him to protect his interest." Id . at 513, 428 P.2d 686.
¶ 15 We hold that this definition of "proper purpose" applies to a timeshare owner's statutory right to inspect records under A.R.S. § 33-2209. "Proper purpose" means a desire by a timeshare owner to derive information that will enable him to protect his interest in the timeshare plan and that reasonably relates to his interest as a timeshare member.
¶ 16 Here, the stated purpose of Zwicky's statutory record request was:
to determine whether the [Association's] Board acted reasonably and in good faith in calculating and approving the assessments *1005 in question ... and to determine whether [Diamond Resorts International (DRI) ] has been paying a fair, equitable and proportionate share of common expenses for units DRI owns, controls, and/or rents to the general public on a profit-generating basis.[4 ]
As more fully explained in later pleadings, Zwicky was attempting to determine why his annual assessments had roughly tripled to the point that his financial interest in the timeshare had become "worthless" and "specifically whether those problems [we]re due to improper management practices."
¶ 17 Zwicky's inquiry could enable him to protect his interest in the timeshare plan and was reasonably related to his interest as a timeshare member. Therefore, Zwicky has articulated a proper purpose for his record request.[5]
B. Mootness
¶ 18 The Association also argues that "[a]t the time Mr. Zwicky sought summary judgment, [the Association] had already provided all of the information and documents requested in Paragraph 20 of the Verified Complaint, rendering this action moot."
¶ 19 Paragraph 20 of Zwicky's complaint listed the information he had previously requested from the Association "to no avail." The list included: (1) the number of points in each resort held by private owners, DRI, the local resort association, and the Association, as well as the corresponding percentages of ownership those points represented, and (2) the amount paid by DRI or its affiliates to each local resort association and to the Association in the form of assessments or other contributions and how that amount was calculated or determined.
¶ 20 While the documents that the Association provided in response to Zwicky's discovery requests contain some of the information listed in Paragraph 20 of Zwicky's complaint, they do not fully explain how the Association calculated or determined annual assessments. Moreover, Zwicky's complaint sought an order both: (1) broadly recognizing and enforcing his inspection rights under A.R.S. § 33-2209, and (2) specifically requiring the Association to "produce, or make available for copying, the books and records described above," presumably in Paragraph 20. Accordingly, the court did not merely grant Zwicky an order authorizing his inspection of the information specified within Paragraph 20. Rather, the court enforced his inspection rights under A.R.S. § 33-2209 as those rights were defined by the superior court.[6]
¶ 21 Accordingly, we affirm the superior court's entry of summary judgment in favor of Zwicky.[7]
II. Modification of the Protective Order
¶ 22 The Association next argues the superior court "erred in modifying the protective order without giving [the Association]
*1006 the opportunity to submit argument and evidence showing why documents produced in reliance on the protective order were entitled to confidentiality." We review a ruling on a protective order for an abuse of discretion. See Blazek v. Superior Court , 177 Ariz. 535, 536, 869 P.2d 509, 510 (App. 1994). A court may abuse its discretion "if the record lacks substantial evidence to support its ruling." See Tritschler v. Allstate Ins. , 213 Ariz. 505, 518, ¶ 41, 144 P.3d 519, 532 (App. 2006), as corrected , (Dec. 19, 2006).
¶ 23 The superior court initially ordered Zwicky to maintain the documents produced by the Association "in confidence" and to disclose them only to his attorneys, accountants, and experts. The Association complied with this order by producing more than one thousand documents, some marked "confidential." Thereafter, Zwicky moved the court to modify its ruling and permit him to quote, refer to, and utilize the documents in filing his proposed federal class action lawsuit. Zwicky's motion did not specifically propose the use of the documents marked "confidential."
¶ 24 Over the Association's objection, the superior court granted Zwicky's motion and modified its protective order. This modification applied to all documents, including those marked "confidential." At oral argument on Zwicky's motion, counsel for the Association asked for an opportunity to submit supplemental briefing to establish why certain documents should continue to be protected as confidential. The court denied his request.
¶ 25 There is nothing in the record to suggest that the superior court reviewed the confidential documents produced by the Association to determine if they should remain subject to a protective order. The Association made an initial showing of why certain documents should be protected as trade secret, proprietary, and confidential. Because the relief requested by Zwicky's motion regarding the "confidential" documents was unclear, we think it appropriate to allow the Association an opportunity to establish why the protective order should continue to apply to these "confidential" documents. Accordingly, we vacate the superior court's ruling modifying the protective order and remand for further proceedings allowing the court to evaluate the need for a continued protective order covering the confidential documents.
III. Notice to Association Members
¶ 26 Finally, the Association argues the superior court erred in ordering it to send the Notice to Association members pursuant to A.R.S. § 33-2210. We review this issue of statutory interpretation de novo. See Price , 236 Ariz. at 269, ¶ 7, 339 P.3d at 652. In doing so, "we look to the statute's plain language to determine its meaning." Id. (citation omitted).
¶ 27 Section 33-2210 provides in pertinent part:
The association or other managing entity shall mail to those persons listed on the owners' list prescribed by subsection A any materials provided by any owner, on the written request of that owner, if the purpose of the mailing is to advance legitimate association business.
A.R.S. § 33-2210(B) (emphasis added).[8]
¶ 28 Here, the superior court ordered the Association to send the Notice, which included the following language:
PLEASE TAKE NOTICE that this Court has ordered the production, for the purpose of inspection, copying and investigation, of certain business records of Defendant Premier Vacation Collection Owners Association ... relating to the levying and apportionment of assessments, to Plaintiff Norman Zwicky, a member of the Association represented by Attorney Jon Phelps of the law firm of Phelps & Moore, PLC.
...
Please do not contact the Court. The Court cannot answer any questions. You may, if you wish, contact the Plaintiff's attorney.
The Court has made no ruling on any claim of improper conduct by the Defendant. The Court's role in this matter was strictly to enforce Mr. Zwicky's rights to inspect certain business records.
*1007 The Notice also contained contact information for Zwicky's attorney.
¶ 29 In superior court, Zwicky stated his intent to file a federal class action lawsuit alleging "misfeasance and malfeasance in the conduct of this timeshare enterprise." The implicit purpose of the Notice is to allow other timeshare members to contact Zwicky's attorney, who in turn can advise them of the proposed class action lawsuit.
¶ 30 Applying the plain language of A.R.S. § 33-2210, we must determine whether the purpose of the Notice advances "legitimate association business." We conclude that it does not. Rather, the Notice benefits Zwicky and his lawyer in their efforts to amass a group of plaintiffs for their proposed class action lawsuit. Therefore, the superior court erred in ordering the Association to mail the Notice pursuant to A.R.S. § 33-2210.
¶ 31 Accordingly, we vacate the order directing the Association to mail the Notice to its members.[9]
IV. Attorneys' Fees
¶ 32 Zwicky requests attorneys' fees on appeal but provides no statutory basis or other authority for such an award. Contrary to Zwicky's assertion, a prevailing party on appeal is not entitled to reasonable attorneys' fees absent a valid basis. Accordingly, we deny his request. See ARCAP 21(a)(2).
¶ 33 Zwicky also requests attorneys' fees at the superior court level. The superior court, however, denied his request for fees, and Zwicky did not cross-appeal from that ruling. Accordingly, we lack jurisdiction to review the court's ruling.
CONCLUSION
¶ 34 For the foregoing reasons, we affirm the superior court's entry of summary judgment in favor of Zwicky. We vacate the court's order modifying the protective order and requiring the Association to mail the Notice to its members. We remand for further proceedings regarding the need for a continued protective order applying to the confidential documents. Because both parties partially prevailed on appeal, we decline to award costs.

We cite to the current version of applicable statutes absent any change material to this decision.

The Association filed a motion to stay execution of the final judgment pending this appeal, which this Court granted.

The parties disagree about the relationship between the Association and DRI. Zwicky alleges the Association "is merely an arm or instrumentality of DRI" and that DRI controls the Association's board of directors. The Association disputes these allegations, acknowledging only that the Association has a management agreement with Diamond Resorts Management, Inc., an affiliate of DRI. We need not resolve that dispute in this appeal.

The Association also argues that A.R.S. § 33-2209 grants the board discretion to limit the production and inspection. While we acknowledge that pursuant to A.R.S. § 33-2209(C), the Association's board is responsible for "determining the appropriateness" of an owner's records request, we conclude the statute does not prohibit a timeshare member from judicially challenging the board's determination.

The Association also argues that "Zwicky's requests for documents are barred by the business judgment rule." That doctrine "precludes judicial inquiry into actions taken by a director in good faith and in the exercise of honest judgment in the legitimate and lawful furtherance of a corporate purpose." Shoen v. Shoen , 167 Ariz. 58, 65, 804 P.2d 787, 794 (App. 1990). The business judgment rule does not negate Zwicky's statutory right to inspect the Association's records under A.R.S. § 33-2209.

Having determined that Zwicky was entitled to the records under A.R.S. § 33-2209, we need not address his rights under A.R.S. § 10-11602 or common law. See Freeport McMoRan Corp. v. Langley Eden Farms, LLC , 228 Ariz. 474, 478, ¶ 15, 268 P.3d 1131, 1135 (App. 2011) ("[W]e do not issue advisory opinions or decide unnecessary issues.").

Subsection A of the statute prohibits an association from publishing the "owners' list or provid[ing] a copy of it to any owner or to any third party." A.R.S. § 33-2210(A).

Federal Rule of Civil Procedure 23 may provide Zwicky and his lawyer a means of notifying other potential plaintiffs. See Fed. R. Civ. P. 23(c)(2)(B) (addressing notice to potential class members).